(65 Misc. Rep. 644.)

## In re McLENNAN.

(Supreme Court, Special Term, Onondaga County.  January, 1910.)

1. ELECTIONS (§ 231*)—CORRUPT PRACTICES ACT—STATEMENTS BY POLITICAL COMMITTEES.

Election Law (Consol. Laws, c. 17) §§ 540–561, relating to the filing of statements of receipts and expenditures of political committees at elections, is intended to compel publicity in regard to campaign funds, and the proceeding for which the article provides must be based on a petition showing failure to comply with the provisions of the law, and giving the names of the parties charged with such failure.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 231.*]

2. ELECTIONS (§ 231*) — CORRUPT PRACTICES ACT — POLITICAL COMMITTEES— STATEMENT OF EXPENDITURES.

The provisions of Election Law (Consol. Laws, c. 17) §§ 540–561, requiring the treasurer of every political committee to file a statement of expenditures, is satisfied by a statement of every disbursement from the funds of the committee, with the name of the person or committee to whom it was made, the date thereof, and its purposes.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 231.*]

Application of Roderick C. McLennan for an order requiring Bert W. Moyer to file a statement of receipts and expenditures representing the Republican Party.  Judgment against applicant.

Michael D. Reilly and J. J. Barrett, for petitioner.

Ray B. Smith and L. L. Waters, opposed.

ANDREWS, J.  Chapter 502 of the Laws of 1906, "An act to amend the election law, in relation to the publicity of contributions to, and expenditures of, campaign funds and providing for judicial inquiries relative thereto," known as the corrupt practices act, now comprises sections 540 to 561 of the election law (Consol. Laws, c. 17).

Section 543 requires every political committee to have a treasurer, and to cause him—

"to keep detailed accounts * * * of all expenditures, disbursements and promises of payment or disbursement made by the committee or any of its officers or members or by any person acting under its authority or in its behalf."

Section 546 requires such treasurer, within 20 days after each election, to file a statement with the Secretary of State, setting forth—

"all the receipts, expenditures, disbursements and liabilities of the committee, and of every officer, member and other person in its behalf.  In each case it shall include * * * the amount of every expenditure or disbursement exceeding five dollars, the name of the person or committee to whom it was made, and the date thereof; and unless such expenditure or disbursement shall have been made to another political committee, it shall state clearly the purpose of such expenditure or disbursement."

Section 544 requires that any one who—

"acting as an officer or member or under the authority of a political committee * * * receives any money or its equivalent, or promise of the same, or expends or incurs any liability to pay the same * * * shall

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

within fourteen days after such receipt, expenditure, promise or liability, give to the treasurer of such committee  *  *  *  a detailed account of the same, with all vouchers required by this article, which shall be a part of the accounts and files of such treasurer."

### Section 545 provides that:

"Every payment required to be accounted for shall, unless the total expense payable to any one person be not in excess of five dollars, be vouched for by a receipted bill stating the particulars of expense, and every voucher, receipt or account hereby required, shall be preserved for fifteen months after the election to which it relates."

Section 548 makes a requirement that statements filed with the Secretary of State shall likewise be preserved for 15 months, and further provides that they, and the accounts required by this article, shall be open to public inspection.

### Section 550 provides:

"If any person or persons or committee or committees fails to file a statement or account as above required, or if any person or committee files a statement which does not conform to the foregoing requirements in respect to its truth, sufficiency in detail, or otherwise, or if any person or committee has failed to comply with any other of the requirements or provisions of this article, the supreme court or any justice thereof, may compel by order in proceedings for contempt, such person or committee to file a sufficient statement or account, or otherwise comply with the provisions of this article."

The proceeding is to be based upon a petition setting forth the failure or failures to comply with the provisions of the law, the facts showing such failure or failures, and the names of the persons or committees charged with them. Thereupon the court is to inquire into the facts and circumstances and into such violations of or failure to comply with the statute as may be alleged in the petition, and into such other facts and circumstances relative to the election or to any contribution or expenditure in connection therewith which the court deems necessary to secure compliance with the law or to punish a violation thereof.

If, on the hearing, it appears that a proper statement has been filed, the proceeding results in judgment against the petitioner.

The object of this statute is clearly to compel publicity with regard to campaign expenses; to prevent by such publicity the improper use of campaign funds; and, in case of improper expenditure, to render easy the prosecution of the offender. With this end in view, it should receive a fair and liberal construction. The object sought to be obtained is important, and it should not be defeated by any narrow or technical ruling. At the same time, if such a thing is possible, the construction should be reasonable, so as not to prevent or unduly embarrass the conduct of political campaigns under our present system.

First, as to what is properly before the court. Although it is given wide powers, it was clearly not the intention that, after every election, it should, without proof, without even the presentation of charges, hold a general inquest upon the conduct of every political committee to determine whether or not a crime may or may not have been committed. There must be some basis for its action. There must be a petition set-

ting forth the facts said to be wrongful, either directly or upon information and belief; or in some way facts and circumstances must come to its attention which seem to show a violation of the statute. It is not enough for a party to say: "There may have been a violation of the statute. We don't know. We would like to have the court investigate and lay the facts before us." As will be seen, the statute gives to every one the power to examine minutely every expenditure made. If any one of them is illegal, the attention of the court should be called to it.

Keeping in mind, therefore, the object of the statute—publicity and the punishment of wrongdoers—the next question is as to precisely what is required as regards statement and accounts. The two words are differentiated by the Legislature. A person who expends any money for a committee is to give a "detailed account" thereof to the treasurer, supported by vouchers. The treasurer is to file a "statement" with the Secretary of State of the expenditures of the committee and of every person on its behalf; and, if a false statement is filed willfully, or if, having filed a statement in good faith, it is incomplete, and the court directs a further statement, and that is not filed, the person offending is liable to fine and imprisonment. In what form, therefore, should be the statement of the treasurer? Such an officer of the state committee gives $250 to A. to pay the expenses of a public meeting in Brooklyn and the same amount to B., C., D., E., and F., in New York, Albany, Syracuse, Rochester, and Buffalo for the like purpose. He gives $2,000 to G. for a special train and the costs of a speaking tour through the state. In his statement he gives those amounts, the purpose of the expenditure, the names of the persons to whom the money is given, and the dates. Is that enough, or must he embrace in his statement the returns of those persons? And, if A. pays $50 to X. for a certain purpose, and X. pays $25 to Y., must the returns of X. and Y. be also included? The treasurer has no personal knowledge of what these persons have done. He cannot say that their accounts are correct. He is given no power to compel such an account. Who may do so are specified in section 551. Yet his statement must be filed within 20 days of the election. What, then, can he do, if he must include these detailed accounts? If they are false or incomplete, he, being ignorant of it, could not be said to have acted willfully. But in that case the judgment requires him to file a true and complete statement within 10 days. He is no more able to comply than before if the one actually making the ultimate expenditure still refuses to account or asserts that his false account is correct. In that case the treasurer. "shall be liable" to fine or imprisonment, or to both.

It may be said that the treasurer must personally supervise every payment made or must make every payment himself. Not only is such a requirement obviously impractical, but the statute itself shows that such was not the intention of the Legislature. Otherwise there would be no need of the provision requiring those making the ultimate payments to file accounts with the treasurer. If a wrong has been done, the person guilty of it is the one to be punished. This is obvious.

Indeed, a statute providing otherwise would be unconstitutional. Fortunately, while this act makes no such attempt, its provisions are sufficient so that every purpose for which it was enacted can be accomplished. A complete system of publicity is provided. The treasurer is to certify as to every disbursement made directly from the funds of the committee by him or by any officer or agent. Such funds are under his control. He is bound to know what use is made of them. He must give the date of such disbursement, the name of the person to whom it is made, and its object. This statement is a summary of the financial business of the committee. This is a public record on file with the Secretary of State. It contains everything as to which the treasurer can truthfully certify.

But he is not required to follow out in detail the use of this money by those to whom he has paid it for a specific purpose—and he can only pay it for such a purpose. If, as in an illustration already used, he gives $500 to A. for the expenses of a public meeting, and A. gives $100 to B. to procure music, and B. pays $25 to one musician and $15 to another, in a sense, B. may be said to make a disbursement on behalf of the committee. But this is not the sense in which the phrase is used in section 546. The expenditure referred to in that section is made when the $500 is given to A. But the person to whom the money is intrusted may not use it for an illegal purpose. The payment to him may not be a mere evasion, intended to cover a crime. For this reason he, also, is compelled to render to the treasurer a detailed account, showing the precise use made of it. And this account is also a public record and is preserved for 18 months.

Under this system, it is perfectly easy for any one interested to determine whether or not there has been wrongdoing. If the statements and accounts are truthful and complete, he can trace every dollar received by the committee. With the Secretary of State are figures showing the total receipts and the disbursements made directly by the committee. With the treasurer are detailed accounts, showing exactly how this money was ultimately expended. A complete and thorough investigation is possible. And if, on such an investigation, the accounts or the statements are found to be false, proper punishment is provided. Nothing would be gained by requiring the treasurer to include in his statement copies of the accounts of persons as to which he has no knowledge. Such copies would be available as evidence against no one, while the original documents, made by those aware of the facts, with the vouchers, might be important.

Something has been said as to the inconvenience of visiting the treasurer's office. The Legislature might have required the accounts and vouchers to be filed with the county clerk, or in some public office. But it has not done so.

The case might arise where the statement of the treasurer was obviously evasive—where he merely pretended to comply with the letter of the law and not with its spirit. The courts will properly deal with such a situation when it arises. But such is not the case before me.

In the report of Mr. Moyer there are over 500 items. Comparatively few are criticised. They are:

1909.

| | | | |
|---|---|--:|--:|
| Oct. 16. | A. J. Littlejohn, clerical services, headquarters | $ 279 | 50 |
| 23. | A. J. Littlejohn, for moneys expended for clerical services, headquarters | 889 | 15 |
| 30. | A. J. Littlejohn, for moneys expended for services and clerical hire, headquarters | 1,172 | 81 |
| 16. | Frank Ressequie, primary election expense | 13 | 50 |
| | C. E. Cooney, for moneys expended for clerical services, headquarters | 116 | 20 |

For moneys expended in procuring registration of voters:

| | | | |
|---|---|--:|--:|
| | F. M. Westcott, Fourteenth Ward | 100 | 00 |
| | J. D. Kernan, Ninth Ward | 100 | 00 |
| | M. D. Rubin, Fifteenth Ward | 130 | 00 |
| | A. J. Kelsey, Tenth Ward | 100 | 00 |

For moneys expended for services rendered in procuring registration of voters:

| | | | |
|---|---|--:|--:|
| 20 | W. H. Freeman, First Ward | 100 | 00 |
| | G. M. Cadin, Seventh Ward | 100 | 00 |
| | G. W. Finegan, Fifth Ward | 100 | 00 |
| | J. B. Fisher, Twelfth Ward | 100 | 00 |
| | Jacob Webber, Eighteenth Ward | 200 | 00 |
| | J. L. Cheney, Sixteenth Ward | 100 | 00 |
| | Henry Reimers, Fourth Ward | 100 | 00 |
| | Fred Traub, Second Ward | 150 | 00 |
| | James McLuskey, Eighth Ward | 100 | 00 |
| | J. V. Stemmler, Third Ward | 100 | 00 |
| | William Hopstein, Sixth Ward | 120 | 00 |
| | J. J. Halloran, Eleventh Ward | 50 | 00 |
| 23. | A. Murray, expenses registration, Seventeenth Ward | 100 | 00 |
| 28 | F. M. Westcott, expenses, personal and card canvass, Fourteenth Ward | 100 | 00 |
| | J. D. Kernan, expenses, personal and card canvass, Ninth Ward | 100 | 00 |
| | M. D. Rubin, expenses, personal and card canvass, Fifteenth Ward | 200 | 00 |
| | A. J. Kelsey, expenses, personal and card canvass, Tenth Ward | 100 | 00 |
| | H. H. Freeman, expenses, personal and card canvass, First Ward | 100 | 00 |
| | George M. Cadin, expenses, personal and card canvass, Seventh Ward | 100 | 00 |
| | G. W. Finegan, expenses, personal and card canvass, Fifth Ward | 100 | 00 |
| | J. B. Fisher, expenses, personal and card canvass, Twelfth Ward | 100 | 00 |
| | J. Weber, expenses, personal and card canvass, Eighteenth Ward | 100 | 00 |
| | J. L. Cheney, expenses, personal and card canvass, Sixteenth Ward | 100 | 00 |
| | Henry Reimers, expenses, personal and card canvass, Fourth Ward | 100 | 00 |
| | Fred Traub, personal expenses and card canvass, Second Ward | 100 | 00 |
| | James McLusky, expenses, personal and card canvass, Eighth Ward | 100 | 00 |
| | J. D. Stemmler, expenses, personal and card canvass, Third Ward | 100 | 00 |
| | William Hopstein, expenses, personal and card canvass, Sixth Ward | 100 | 00 |
| | A. Murray, expenses, personal and card canvass, Seventeenth Ward | 100 | 00 |

It will be seen that these items are covered by this decision. Two thousand three hundred and fifty dollars and forty-six cents were paid to Mr. Littlejohn for clerical services. It appears that a contract was made with him to do this work. He did it, hiring clerks and stenographers; and his detailed account with vouchers is on file in the treasurer's office. If it is false or incomplete, that fact is easily determined. The same thing may be said as to the $116.20 paid Mr. Cooney.

As to the various sums paid to obtain the registration of voters and the card canvass, it is claimed without contradiction that a contract was made with the persons named to do this work and that the price fixed was fair and reasonable. There is no charge as to any of these sums that for the service rendered the amount paid was excessive, or that the payment was not in fact made, or was not made for the purpose indicated. There is no charge and absolutely nothing to show that it was not a personal payment for personal services. If so, that is all that is necessary. But if, on the contrary, these men acted as disbursing agents, their account should be filed. Even then, however, Mr. Moyer has complied with the statute.

It is but fair to say that Mr. Moyer seems to have done his duty honestly and conscientiously. He has apparently intended to comply with the letter of the statute and with its spirit also. It would have been better if, before this proceeding was begun, an attempt had been made by the petitioner to inspect these accounts which have been questioned and to have determined from such inspection whether they were fair or complete. That has not been done. No charge is made that any statement or account is false. Reliance is placed alone upon a somewhat technical construction of the statute; a construction, as I have held, that is a mistaken one.

Judgment must be rendered against the applicant and in favor of the treasurer for his costs and disbursements to be taxed by the court.

Judgment accordingly.