# Umbel's Election.

*Election law—Expenditures of candidates—Accounts—Act of March 5, 1906, P. L. 78.*

1. An account of a candidate for nomination showing expenditures made in his behalf to secure the nomination, is insufficient under the Act of March 5, 1906, P. L. 78, if it shows moneys paid by the candidate to individual agents of his own to be used on his behalf, but fails to show for what purposes the moneys thus intrusted to the agents were used.

2. An account which merely exhibits the fact that the candidate has deposited money in the hands of an agent to be used for legitimate expenses, and does not show the person to whom, and the purpose for which, the agent paid the money, is not such "a full, true and detailed account," as the act of 1906 plainly contemplated.

3. To be a true account within the spirit and intent of the act, it must set forth each and every sum of money disbursed by the candidate, whether personally, or by his agent for election expenses, the date of each disbursement, the name of the person to whom paid, and the object or purpose for which the same was disbursed; and, moreover, the account must be accompanied by vouchers for all sums expended exceeding $10.00 in amount. Filing the receipts of his agents for the money placed by him in their hands does not fully meet the requirements of the act.

4. In a contest over a candidate's account, an agent to whom the candidate intrusted money to be expended, may be asked to give a detailed statement of the manner in which he expended the sums intrusted to him, without any preliminary proof that the candidate knew and consented to the disbursement of the moneys by the agent for illegal purposes. Bechtel's Election Expenses, 39 Pa. Superior Ct. 292, distinguished and explained.

5. The agent of the candidate may be asked whether he had spent the moneys received by him from the candidate in the purchase of a vote, or whether he had used moneys of his own for such a purpose with the candidate's knowledge and consent.

6. An offer to prove that the agent expended moneys received from the candidate for the purchase of votes to be followed by further proof that such practice and means of getting votes was known to and consented to by the candidate, should be admitted.

7. In a contest over a candidate's account of expenditures it is not competent upon cross-examination of the candidate to inquire as to his motive in permitting his counsel to raise objections which they deemed proper to the offer or admission of testimony.

8. Where a candidate includes in his account the price of a box of cigars, he is not estopped by the fact that he included such an item in his account, from showing that the use of the cigars was but the common courtesy which men extend to friends without any thought on his part or their part that the latter would be influenced in their votes thereby.

Argued Jan. 20, 1911.    Appeal, No. 290, Jan. T., 1910, by Robert E. Umbel, from judgment of Superior Court, April T., 1910, No. 125, reversing judgment of Q. S. Fayette Co., June Sessions, 1910, No. 257, dismissing

petition for audit in In re Audit of Account of Robert E. Umbel, candidate for democratic nomination to the office of judge. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from Superior Court. See 43 Pa. Superior Ct. 598.

The facts appear in the opinion of RICE, P. J., which was in part as follows:

Preliminarily to a discussion of the questions raised by the assignments of error to rulings upon offers of evidence, it is important to determine whether the account filed by the respondent conforms to the requirements of the Act of March 5, 1906, P. L. 78. The account embraced two classes of items, (1) expenditures made by the respondent personally, (2) payments made by him to certain individuals of certain sums of money "for expenditure in my behalf under the 1st, 2d, 6th, 7th and 8th Par. of sec. 4, act of Mar. 5, 1906." There are twelve items of the latter class, showing payments to five different persons, aggregating $3,670, and these give no further information as to the purposes for which the money was actually expended than is indicated by the words and the figures above quoted. The receipts given by the persons to whom the respondent paid the money are equally indefinite. The plain import of the account is that these sums of money were paid to these five persons, not as compensation for their services in disseminating information to the public or in acting as watchers or the like, but to be expended by them in the respondent's behalf for some or all of the purposes mentioned in these paragraphs of the act, or to reimburse them for payments made by them to others in his behalf for these purposes. These persons did not constitute a political committee by whom or by whose treasurer an account was to be or could be filed; they were merely respondent's agents or representatives. Although the candidate for nomination

may make expenditures for lawful purposes through an agent, "it is still he that acts and when he accounts he must account for all that he has done:" Bechtel's Election Expenses, 39 Pa. Superior Ct. 292. An account which merely exhibits the fact that the candidate has deposited money in the hands of an agent to be used for legitimate expenses, and does not show the person to whom and the purpose for which the agent paid the money, is not such "a full, true and detailed account" as the act plainly contemplates. Speaking of this subject, our Brother HEAD said, in the case last cited: "In the act now before us the legislative command is that the account shall be 'full, true and detailed,' and shall disclose the information specified in the language we have already quoted. In the narrowest sense of the word, an account might be true which was neither full nor detailed, which contained but a single item showing the payment of a large sum, in bulk, to some person, but which in no sense exhibited the information demanded by the law. True in fact as to what it actually did disclose, but untrue, false within the meaning of the act, in its failure to obey the mandate of the law, and account for that money in the manner and to the extent required by the lawmaker." Viewing the account in the light of this construction of the requirements of the statute, we must conclude that the learned judge erred in his findings embraced in the sixteenth and seventeenth assignments of error, wherein he held that the account is true in that it contains a statement of all moneys expended by the respondent in connection with his nomination.

To be a true account within the spirit and intent of the act, it must set forth each and every sum of money disbursed by the candidate, whether personally or by his agent, for election expenses, the date of each disbursement, the name of the person to whom paid, and the object or purpose for which the same was disbursed; and, more· over, the account must be accompanied by vouchers for all sums expended exceeding $10.00 in amount. Fil-

ing the receipts of his agents for the money placed by him in their hands does not fully meet the requirements of the act. No reason is suggested in the respondent's account for the omission to set forth in the manner above indicated a detailed statement of the disbursements made by his agents, nor does it appear by his testimony that it would have been impossible for him to do so. Unless these facts can be developed on the audit, one of the manifest purposes of the act can be easily defeated by the omission to give the information in the account itself. Before concluding that the act is so ineffective, it will be well to notice some of its provisions relative to the scope of inquiry permissible on the audit. At the date fixed therefor the person by whom the account has been filed is "required to be present in person, to vouch his account, and answer, on oath or affirmation, all such relevant questions concerning the same as may be put to him by the petitioners or their counsel." Subpœnas may be issued "to all parties whom the petitioners or the accountant may require to give evidence concerning such account," and sec. 12 of the Act of March 5, 1906, P. L. 78, provides: "No person shall be excused from answering any question, in any proceeding under this act, on the ground that such answer would tend to incriminate him; but no such answer shall be used as evidence against such person in any criminal action or prosecution whatever, except in an action for perjury in giving such testimony." If upon the audit the court shall decide "that the account was false in any substantial manner, or that any illegal election expenses were incurred, the costs of said audit shall be paid by the accountant; but, otherwise, by the petitioners." So, also, if the court shall decide "that any person, whether a candidate or not, has incurred illegal election expenses, or has otherwise violated any of the provisions of this act, it shall certify its decision to the district attorney of the county in which such person may reside, and it shall thereupon be the duty of such district attorney to institute criminal proceedings against such

person." It is thus seen that the scope of the audit of the account of a candidate for nomination is very broad, and, as pointed out in the case cited, the provisions of the act in this regard, being remedial, are to be given liberal construction. Granting that the ultimate object of the audit is to ascertain whether any illegal election expenses were incurred by the candidate, there is necessarily involved in that inquiry, particularly if the account itself does not show the facts, the ascertainment of the amount of each disbursement made by him and of each disbursement made by his agents of the money placed in their hands, the person to whom paid and the object for which the same was disbursed. As the purpose of requiring an account, to adopt the words of our Brother HEAD, is "to compel the candidate to place upon the public records such clear and detailed information as would enable the people to determine, after an inspection of his account with the accompanying vouchers, whether he had obeyed or violated the mandates of the law in which they were so vitally interested," so, also, one purpose of the audit of such an imperfect account as this is to ascertain the facts which are not, but should have been, set forth therein. All of the questions put to the witnesses S. E. Frock and B. F. Sterling (these being persons to whom the accountant paid money for disbursement in his behalf or to reimburse them for expenditures made in his behalf), which are quoted in the third, fourth, fifth, sixth, seventh, eighth and ninth assignments of error, were relevant to the purpose of the audit last referred to. For example, the petitioners proposed to ask the witness Frock to give a detailed statement of the manner in which he expended the $1,050 which the account shows was placed in his hand. The stated purposes of this offer were, (1) to show the details which the act requires, (2) to ascertain whether or not the statement made in the receipt that it was spent under the act of 1906 was or was not correct. The objections to this offer were sustained, and as they show quite plainly the

theory upon which all similar offers were objected to and rejected, we quote them as they were stated by counsel: "Objected to for the reason that if the expenditures were lawful it is immaterial, and if they were not lawful there is no evidence yet offered showing that such expenditures were made with the knowledge or consent of the candidate, and generally as incompetent and irrelevant." This theory is entirely inconsistent with the conclusions heretofore stated in this opinion. These witnesses, from whom the petitioners sought to obtain information which ought to have been furnished in the account, were the respondent's agents. It is not to be presumed that the petitioners knew how, to whom and for what purposes they had disbursed all the money. Moreover, as we have endeavored to show, the relevancy of the evidence they tried to bring out by examination of these witnesses did not depend on proof that the money was spent for illegal purposes. The account did not show in detail how it was spent. "As it did not the audit was made necessary in order that the all-important fact might appear:" Bechtel's Election Expenses, 39 Pa. Superior Ct. 292. Therefore, the general rule that the order of evidence is within the discretion of the trial court has no application to those assignments. For both of the reasons last suggested, the petitioners should not have been required to prove in advance, or to make a distinct and positive offer to prove afterwards, that the respondent's money had been disbursed by these agents for illegal purposes, with the respondent's knowledge and consent. That inquiry would arise when the facts which the account ought to have disclosed were developed. As already suggested, to hold that the petitioners could only inquire of these agents as to the expenditures of the money placed in their hands which the petitioners were able to prove were made for illegal purposes, would be to put a construction on the act which would defeat one of its plain and salutary objects.

It is urged that the rulings complained of in these as-

signments were in accordance with our decision in the Bechtel case. This position is not sustained by anything that was said by this court in the opinion in that case, and the tenor of the opinion as a whole is clearly opposed to it. But much stress is laid on the fact that we over-ruled the fourth assignment in that case, and this is urged as a complete vindication of the rulings under consideration here. We cannot agree with the learned judge and the counsel for the appellee in this contention, and a brief review of the facts and considerations which led to the conclusion that that assignment did not contain reversible error will show that the ruling falls far short of sustaining their position in the present case. In the account filed by the respondent in that case appeared this item: "J. H. Nichter as per receipt, $700." The receipt appears at page 293 of the report of the case. Nichter was called by the petitioners and was examined fully by their counsel as to the dates when he received the money from the respondent and as to his expenditure of it. He also produced receipts, which were offered in evidence, showing the persons to whom and purpose for which he had paid it. His examination upon the subject as to how he had spent the $700 was quite full and was not hampered by such objections as were raised in the present case to the examination of the respondent's agents. Then came the question which was objected to, namely, "Did you furnish any liquor during the campaign in the interests of H. O. Bechtel?" This question on its face was not an inquiry as to how he had expended the $700, but was so worded as to cover expenditures that he may have made on his own account for the purposes mentioned. Nor was the question accompanied by a distinct and unequivocal offer to connect the respondent with the expenditure. Indeed, the answer of counsel for the petitioners to the question of the court while not very clear, tended to show that they could not connect the respondent with it. Upon a full view of the course of the examination of the witness Nichter and the somewhat indefinite

and ambiguous character of the question put to him, we were not convinced that the assignment contained reversible error. In order, however, that this ruling may not be misunderstood hereafter, as it apparently was upon the present audit, we remark that if the petitioners' counsel had asked Nichter the direct question whether he had used any part of the money placed in his hands in purchasing liquors to be given to voters, or whether he had furnished liquors to voters with the knowledge and consent of the respondent, or if objection had been made to the questions requiring the witness to give a detailed statement of the persons to whom and the purposes for which he had paid the $700, and the court had, in either of these instances, sustained the objection, a different question would have been raised by the assignment of error and a different ruling ought to have been, and would have been, made thereon. Comment is also made upon our ruling upon the seventh assignment of error in that case. But there, also, the question put to the witness McGinty was ambiguous; it was not in terms or in effect a question whether the witness had furnished liquors to voters, with the knowledge or consent of the candidate. It is plainly distinguishable from the question the rejection of which is the subject of the twelfth assignment of error. The third, fourth, fifth, sixth, seventh, eighth, ninth and twelfth assignments are sustained.

The offer in the second assignment of error was to prove by the witness Bell "that part of the money received by Mr. Frock from the accountant was expended by him in the purchase of this man's vote, to be followed by further testimony that such practice and means of getting votes was known to and consented to by the accountant." And further on the offer was supplemented by proposing to follow it "by other evidence that this act was with the knowledge and consent of the accountant." There are two aspects in which this offer may be considered. If it had been merely to prove by this witness, who was a stranger to the respondent, that Frock used

money in the purchase of votes, without any allegation that it was the respondent's money or that it was used for this purpose with the respondent's knowledge or consent, the relevancy of the offer at the time it was made would not have been apparent. But, being accompanied by an offer to follow it by evidence of the respondent's consent, it would have been proper for the court to have received the evidence upon the presumption that the offer of counsel, that they would follow it by other evidence of the respondent's knowledge and consent, was made in good faith. If they failed to make good their offer the court could have struck out or disregarded the testimony adduced in answer to their questions. But it must be conceded that where the relevancy of an offer of evidence depends upon proof of other facts the trial court has discretionary power, in ordinary cases, to say that proof of these other facts shall precede the admission of the offered evidence, and that, unless this discretion be plainly abused, the appellate court will not reverse. The other aspect in which the offer should be considered includes the proposition that the money used by Frock was part of the money which had been placed in his hands by the respondent to be used in the latter's behalf. In this aspect the purpose of the offer was to show how the money had been expended; and for this purpose the evidence was relevant, as we have endeavored to show in the consideration of the provisions of the statute relative to the scope and purpose of the audit. Of course, we do not mean to be understood as deciding that the candidate would be responsible for the betrayal of the trust reposed by him in his agent. But as the purpose of the statute is to secure publicity as to the persons to whom and the purposes for which the money supplied by the candidate to secure his election has been paid, it is highly important that a wider latitude should be given in the investigation than would be permissible in a criminal prosecution against the candidate for a violation of the election laws relative to the expenditure of money. We are of opinion

that the offer should have been admitted. Therefore this assignment is sustained.

The respondent was represented at the audit by counsel. They made the objections which we have been considering undoubtedly in good faith and in the exercise of their judgment as counsel. It was not competent upon cross-examination of the respondent to inquire as to his motives in permitting his counsel to raise the objections which they deemed proper. The tenth assignment is therefore overruled.

We cannot see that reversible error was committed in the rejection of the question which is the subject of the eleventh assignment. The fact that the respondent had not obtained itemized accounts of these expenditures unaccompanied by any explanation of the fact, was in the case for the purposes of such legitimate argument as it would tend to support.

In overruling the fifteenth assignment, we are not to be understood as holding that the influencing or attempting to influence voters by the gift of liquors or cigars is any less illegal than the attempt to influence them by the gift of money or other valuable thing. Under the testimony of the respondent, and the court's finding of fact based thereon, the item, "Markle's Drug Store for one box of cigars $3.00," was not an election expense within the meaning of the act, and need not have been included in his account. He was not estopped, by the fact that he included it in his account, from showing that the use of the cigars was but the common courtesy which men extend to friends, without any thought on his part or their part that the latter were to be influenced in their votes thereby. See Kinney's Election Expenses, 39 Pa. Superior Ct. 195. This assignment is overruled.

We cannot say that the findings embraced in the thirteenth and fourteenth assignments are not in accordance with the evidence presented. The fundamental error is that offers of relevant and material evidence were excluded.

The judgment is reversed at the costs of the appellee, and the record is remitted to the court below for further hearing, proceeding and decision according to law.

*Error assigned* was judgment of Superior Court.

*John G. Johnson*, with him *D. M. Hertzog, W. C. McKean* and *Sterling, Higbee & Matthews*, for appellant,

*M. H. Stevenson*, with him *S. J. Morrow, F. P. Rush* and *H. S. Dumbauld*, for appellees.

PER CURIAM, March 20, 1911:

The judgment is affirmed on the opinion of the learned president judge of the Superior Court.