## SUPREME COURT — NEW YORK COUNTY.

### September, 1918.

## THE PEOPLE EX REL WILLIAM HAMLIN CHILDS v. DAVID H. KNOTT, SHERIFF.

(1.) CORRUPT PRACTICES ACT—GRAND JURY WITHOUT JURISDICTION TO RETURN AN INDICTMENT THEREON.

When the Legislature prohibits an act or lays a duty where none has existed theretofore, and as a part of the same act provides a complete remedy for any violation of the act, then such complete remedy so provided is the one which the Legislature intended to be the exclusive remedy for any such violation, and such violation is to be enforced in the manner prescribed by the statute.

(2.) SAME.

The Corrupt Practices statute created a duty where none had existed before, and since such statute provides the manner of its enforcement and the penalty for a violation thereof, it follows that the only penalty is the one so prescribed, and that such penalty must be enforced in the manner prescribed in said statute.

(3.) SAME—HABEAS CORPUS SUSTAINED.

Where a person is imprisoned under an indictment which the grand jury had no jurisdiction to return a writ of habeas corpus will be sustained.

*John B. Stanchfield* of counsel (*Isidor J. Kresel* and *J. Arthur Leve* with him on the brief; *Stanchfield & Levy,* attorneys) for relator.

*Robert C. Taylor* and *Robert S. Johnstone, Assistant District Attorneys,* of counsel (*Felix C. Benvenga* with them on the brief; *Edward Swann, District Attorney*), for respondents.

FINCH, J.:

This is a writ of habeas corpus to inquire into the cause of detention.

The relator contends that no grand jury has jurisdiction to

return an indictment nor has any court jurisdiction to entertain a criminal action against the relator upon the matters set forth in the indictments.

On April 16, 1918, the relator was indicted for the alleged willful failure to include the name of the person to whom paid, the date when paid, and the purpose of a payment, in a filed statement concerning the expenditures of a political party. That indictment was subsequently superseded on May 8, 1918, when three other indictments were found. The return to the petition shows that the relator is held under these three indictments, copies of which are annexed to the petition and known as "Exhibits B, C and D." "Exhibit A," also annexed to the petition, is a copy of the indictment found on April 16. "Exhibit B" in substance asserts a violation of the Corrupt Practices Act (Election Law, secs. 540-562), in that the relator, together with two others, willfully omitted to set fourth certain payments made to one Sulzer. Reference is also made to section 751 of the Penal Law, the inference being that by violating the Corrupt Practices Act section 751 of the Penal Law was also violated. "Exhibit C" appears a literal reprint of "Exhibit B," except that in place of the name of William Sulzer is inserted the name of Misha Appelbaum, and there is a difference in the amounts paid, and the relator is the sole defendant. "Exhibit D" attempts to set forth a charge of conspiracy under section 580 of the Penal Law. It asserts in substance that relator and two others conspired to cause the omission of the name of the person to whom paid, the amount, the date and the purpose of a payment in a filed statement concerning the expenditures of a political party, in violation of the Corrupt Practices Act above referred to.

Two questions of law are presented for decision, which questions may be briefly stated as follows: First, Has the relator committed any indictable offense? and, second, if he has.

not, will the court grant him relief upon a writ of habeas corpus?

Considering the question whether the relator has committed any indictable offense, it is first to be noted that previous to the enactment of the Corrupt Practices Act in the year 1906 not only were the acts now prohibited by such act not prohibited, but there was absolutely no duty on any person to file a statement of receipts and expenses in connection with an election. The act known as the Corrupt Practices Act was passed in 1906, and as Mr. Justice Andrews has well said: " The object of the statute is clearly to compel publicity with regard to campaign expenses; to prevent by such publicity the improper use of campaign funds, and, in case of improper expenditure, to render easy the prosecution of the offender. With this end in view it should receive a fair and liberal construction. The object sought to be obtained is important and it should not be defeated by any narrow or technical ruling." (Matter of McLennan, 65 Misc. 644, at p. 646.) This statement of the obvious object of the act appears upon its face even from a casual reading. Instead of relegating the parties to a trial, either civil or criminal, with the inevitable delays that must necessarily attend upon the trial of a hotly contested issue, the Legislature provided for a summary proceeding which might be instituted by the district attorney, attorney-general or a candidate voted for at the election, or by five qualified voters who had voted at the election. Upon a written petition being presented setting forth the failure of a person or political committee to comply with this act, together with a bond to pay the expenses if the petitioner should be defeated, the court must issue an order to show cause, which must be personally served upon the person or persons named in the petition. Section 554 of said act is entitled " Proceedings to be summary " and provides that " upon the return of the order to show cause provided for in section 552 the court or justice shall immediately, and in such manner

as the court or justice shall direct, and without respect to any
technical requirement, inquire into the facts and circumstances
and into such violations of or failure to comply with the pro-
visions of this article as may be alleged in any such petition,
or into such other facts and circumstances relative to any such
election or to any contribution or expenditure made in
connection therewith which at any time, whether before or dur-
ing the continuance of such inquest, the court or justice holding
such inquest shall deem necessary to secure compliance with
the provisions of this article or to punish for a violation thereof.
Such other persons as the court or justice shall deem necessary
or proper to join or bring in as parties to the said proceeding in
order to make its order, judgment or writs effective, may be
joined as parties in such manner and upon such notice as said
court or justice shall direct." Provision is made for compelling
the attendance of witnesses and examination of such witnesses
by the district attorney or attorney-general or some person des-
ignated by either or by the court, and for the right to appear by
counsel to examine and cross-examine witnesses on behalf of the
persons or committees by or against whom the proceeding is
brought. No person shall be excused from testifying on the
ground that it would tend to convict him of a crime or subject
him to a penalty or forfeiture. The act confers power upon
the court to render judgment as follows: If there has been a
failure to file any statement or failure to file a complete state-
ment and such default was not willful, the court may direct
the compliance with the act within ten days. If, however, the
default was willful or there is a failure to file within the ten-
day period, the court may impose a fine not exceeding one thou-
sand dollars or imprisonment for not more than one year, or
both. If the court shall find that the act has not been violated,
judgment is to be rendered against the petitioners for the costs
and disbursements of those proceeded against. The act thus
provides a complete remedy by means of summary proceedings

for a violation of its provisions.  It does not appear that any attempt was made to proceed against the relator in accordance with the provision of this act, but he has been indicted as set forth.  It has been repeatedly held that when the Legislature prohibits an act or lays a duty where none has existed theretofore, and as a part of the same act provides a complete remedy for any violation of the act, then such complete remedy so provided is the one which the Legislature intended to be the exclusive remedy for any such violation, and such violation is to be enforced in the manner prescribed by the statute.  The question is solely one of arriving at the intention of the law-creating body from the language used by it, and this canon of construction is thus both good sense and good law.  As was said by Chief Justice CHURCH in People v. Hyslop (77 N. Y. 331) : " When a statute creates a new offense and makes that unlawful which was lawful before and prescribes a particular penalty and mode of proceeding, that penalty alone can be enforced. The offense is not indictable.  (People v. Stevens, 13 Wend. 311; Lane v. Brown, 16 Wend. 561; Rex v. Wright, 1 Burr. 543.)"  At page 333 : " The intent of the Legislature to elevate an act to the importance of a crime cannot be imputed by loose inferences and doubtful implication, but must be made to appear with reasonable certainty.  We may guess that the Legislature intended to make all prohibited acts criminal offenses, but it is impossible to so affirm with any degree of certainty, and the fact that they do not so declare is indicative that they did not so intend."

Since the Corrupt Practices statute created a duty where none had existed before, and since such statute provides the manner of its enforcement and the penalty for a violation thereof, it follows that the only penalty is the one so prescribed and that such penalty must be enforced in the manner prescribed in said statute.  It follows that the relator has been

indicted when no grand jury has jurisdiction to return an indictment.

The learned district attorney urges that a violation of the Corrupt Practices Act constitutes likewise a violation of subdivision 12 of section 751 of the Penal Law. Section 751 of the Penal Law is entitled: "Misdemeanors at or in connection with political caucuses, primary elections, enrollment in political parties, committees and conventions." And all its twelve subdivisions purport to refer to primary elections as distinct from general elections. In addition, in section 750, immediately preceding, the word "election" is defined to include general elections except as used in section 751, thus clearly showing the intent of the lawmakers to confine the word "election" as used in section 751 to primary elections. Since said section 751 specifically refers to primary elections general words found therein following specific words designating special things must, in accordance with the familiar rule of construction, be limited to cases of the same general nature as those which are specified. (Lantry v. Mede, 127 A. D. 557, aff'd on opinion below, 194 N. Y. 544; State Board v. Gasau, 195 N. Y. 197; Thames & Mersey Marine Ins. Co., Ltd., v. Fraser Co., L. R., 12 App. C. 484, at p. 490.) As noted, the acts for which the relator has been indicted arose out of a general election and not in connection with a primary election. In addition, to agree with the contention of the district attorney would violate that settled canon of construction to which attention has already been called. (People v. Hyslop, *supra*.)

The learned district attorney, however, contends that although indictments "B" and "C" may be defective for the reasons given, nevertheless indictment known as "Exhibit D" is valid because within the inhibition provided by subdivisions 1 and 6 of section 580 of the Penal Law. This section, with the subdivisions, is as follows:

"Section 580.   Definition and punishment of conspiracy.

If two or more persons conspire: 1. To commit a crime; or * * * 6. To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws, each of them is guilty of a misdemeanor."

Neither of these subdivisions upon their face would seem to include within the terms of the language used an alleged violation of the Corrupt Practices Act, and it has been so held. (People ex rel. William Hamlin Childs, relator, v. Extraordinary Trial Term of the Supreme Court et al., New York Law Journal, July 22, 1918.) Moreover, to so hold would substitute a remedy and a manner of enforcement other than that expressly provided in the Corrupt Practices Act itself for a violation of the same, and this, as settled by the authorities, cannot be done. (People v. Hyslop, *supra.*)

It thus follows from what has preceded that the relator has done nothing for which he is indictable, even assuming that the alleged facts are true. May the relator then obtain the relief to which he is entitled on the merits by a writ of habeas corpus? The learned district attorney urges that even assuming the facts found above, yet relief may not be granted by means of a writ of habeas corpus, upon the ground that the relator should demur to the indictment or move in arrest of judgment, and if the relief should be denied, then to raise the question by means of appeal. In the first place, it is to be noted in the case at bar that there was no general class of indictable offenses concerning which any grand jury or court had the power to determine whether the acts committed by the relator were sufficient to fall within such class of offenses. For this reason no grand jury had jurisdiction to return an indictment, nor any court power to entertain a criminal action based upon an indictment for the matters set forth in the indictments annexed to the petition herein. As was said in Lange v. Benedict (73 N. Y. 1, at p. 27): " What is meant by jurisdiction of the subject matter we

7

have had occasion to consider lately in Hunt v. Hune (72 N. Y. 218.) It is not confined within the particular facts, which must be shown before a court or judge, to make a specific and immediate cause of action: it is as extensive as the general or abstract question, which falls within the power of the tribunal or officer to act concerning."

And again, in Matter of Gregory (219 U. S. 210) : " Given a valid enactment, the question (assuming it to be one demanding judicial examination) whether a particular case falls within the prohibition is for determination of the court to which has been confided jurisdiction over the class of offenses to which the statute relates."

In People ex rel. Conway v. The Warden (180 A. D. 336), a case much relied upon by the district attorney, the court is careful in its opinion to point out that just such class of offenses did exist in that case, namely, the offenses arising out of disorderly conduct, and in consequence the magistrate had jurisdiction to determine if the facts alleged in the particular case brought it within the class. An examination of the cases upon this subject will but serve to emphasize this distinction.

Must relief by way of habeas corpus be denied, however, because the relator may also raise the question by demurrer or motion in arrest of judgment ? The authorities in this State appear to sustain the relator's right to relief by habeas corpus. In People ex rel. Stabile v. Warden, &c., (202 N. Y. 138, at pp. 151, 152 and 153), the court said:

" There remains but one other question for consideration, and that is whether the relator's right to a discharge can be determined in this proceeding." * * *

" It is not important to consider the relator's chances of being discharged if he should move in the Court of General Sessions for an order for his discharge upon the ground that he has been once placed in jeopardy." * * *

" This is one of the cases where the facts before the court can-

not be materially changed, and where the writ should be sustained " (quoting cases).   *   *   *

In People v. Moss (187 N. Y. 410, at p. 418) it is said: " Section 2015 of the Code of Civil Procedure provides that ' a person imprisoned or restrained in his liberty within the State for any cause or upon any pretense is entitled   *   *   * to a writ of habeas corpus or a writ or certiorari, as prescribed in this article, for the purpose of inquiring into the cause of the imprisonment or restraint, and in a case prescribed by law of delivering him therefrom.'   The petitioner is only required to state, among other things, that he ' is imprisoned or restrained in his liberty; the place where   *   *   *   and the officer or person by whom he is so imprisoned or restrained.'   Sec. 2019, Code Civ. Pro.)   The arrest of the relator was an actual restraint of his person, and he was not obliged to await an examination before the magistrate.   The provision of the statute in that respect was for his benefit, in order that he might be informed of the charge and that he might have the opportunity to examine the witnesses and to make any statement in relation to the charge.   (See Code Crim. Pro., secs. 188 to 197.)   He could waive these proceedings, however, and immediately sue out the writ that the legality of his detention under arrest might be inquired into.   The statute which confers the right to the writ of habeas corpus has always been construed in favor of the liberty of the citizen.   The protection afforded by it against arbitrary and illegal arrest is within the guaranties of our Constitution, and the statutes of the State have always been intended to increase the facilities for the issuance of this great and valuable common-law writ to insure the prompt hearing and disposition of the petitioner's case."   See also People, &c., v. Hayes (215 N. Y. 172).   In a late case in the United States Supreme Court it is said: " The cases cited do not of course lead to the conclusion that a citizen can be held in custody or removed for trial where there was no provision of the common

law or statute making an offense of the acts charged. In such case the committing court would have no jurisdiction, the prisoner would be in custody without warrant of law and therefore entitled to his discharge." (Henry v. Henkel, 235 U. S. 219, p. 230.)

In People ex rel. McLaughlin (194 N. Y. 556) the court declined to grant relief by way of habeas corpus upon the ground that the facts were not sufficiently developed to justify a determination, but the court was careful to point out that such relief would be granted " where the facts before the court cannot be materially changed, qualified or explained.   *   *   * "

In People ex rel. Scharff v. Frost (198 N. Y. 110), a case also relied upon by the district attorney, the question arose upon a plea based upon the marriage of the defendant subsequent to the beginning of the action, and hence the court had jurisdiction at the beginning of the action and, also, the validity of the plea depended upon a question of fact which was within the jurisdiction of the court to determine. The majority opinion clearly placed the decision upon this ground, the court saying: " There was not, however, such an utter lack of jurisdiction or power to pronounce judgment as entitled the relator to relief by habeas corpus. The Court of General Sessions had jurisdiction of the defendant and of the offense, and under the plea of guilty was empowered to pronounce the sentence which it did pronounce unless the fact of the defendant's marriage to the complainant was established by competent proof. No one would think of questioning its jurisdiction to render the judgment if it had determined that no marriage had in fact taken place."

Moreover, as pointed out by the court in People ex rel. Morse (supra), it is provided by section 2015 of the Code of Civil Procedure that " a person imprisoned or restrained in his liberty, within the State, for any cause, or upon any pretense, is entitled, except in one of the cases specified in the next section, to a writ

of habeas corpus or a writ of certiorari, as prescribed in this article, for the purpose of inquiring into the cause of the imprisonment or restraint, and, in a case prescribed by law, of delivering him therefrom. * * * " And by section 2043 it is provided that " if it appears that the prisoner is unlawfully imprisoned or restrained in his liberty, the court or judge must make a final order discharging him forthwith." This appears to be mandatory as to the relator's right to have the writ sustained in this proceeding.

It would seem, as the relator is entitled to his discharge as a matter of law, that the time and expense of a trial should not be imposed upon the court, county and the relator.

Writ sustained and relator discharged.