In the Matter of the Application of RALPH F. BAXTER and Others, Petitioners, for an Order against GEORGE FARKAS, as Treasurer of the Associated Willkie for President Clubs of Bronx County, and J. M. RICHARDSON LYETH, as Treasurer of the Independent Republican Committee for Bronx County, Respondents.

Supreme Court, Special Term, Bronx County, July 26, 1941.

*Hahn & Hahn* and *Samuel J. Joseph* [*Samuel J. Joseph* and *Demarest J. Hahn* of counsel], for the petitioners.

*Bennett, House & Couts* [*Victor House* of counsel], for the respondents.

EDER, J. Proceedings under articles 13 and 14 of the Election Law.

The respondents Farkas and Lyeth served, respectively, as treasurer of " Associated Willkie for President Clubs of Bronx County " and " Independent Republican Committee for Bronx County," each of said bodies being a political committee as defined by section 320 of the Election Law. Each of the respondents filed with the Secretary of State statements of campaign receipts and expenditures in attempted compliance with sections 321 and 322-a of the Election Law.

It is the claim of the petitioners that these statements are not sufficiently complete and informative in that there is a lack or omission of information respecting details of certain specified items which were required to be stated by the statute and this application is made pursuant to sections 334 and 335 of the Election Law for an order directing the respondents to file supplemental financial statements which shall be true and complete and the court is asked to take proof *viva voce* as to the truth of the statements and the expenditures reported.

There is no controversy presented as regards contributions received; the litigation concerns certain alleged specific expenditures which it is contended are not properly detailed in the financial statements heretofore filed by the respondents.

It is apparent from the moving papers and brief that there exists considerable inter-party bad feeling, and this is augmented by veiled hints of fraudulent and dishonest practices by the respondents and a general investigation of their activities is sought. It may be announced at the very outset that while the statute vests this court with authority to conduct a judical audit of the accounts of each of the respondents as treasurer of a political committee, this court is not interested in the inter-party strife or ill-feeling which has existed or may exist between these litigants and has no intention of permitting and will not permit the statute or the court to be used as a medium for the venting of personal spleen. If the court reaches the conclusion that the application is not made in good faith, or is without legal grounds therefor, it will not entertain it; the court is concerned solely with carrying out and giving effect

to the objects and purpose intended by the Legislature in the enactment of the mentioned provisions.

The statute in concern was quite clearly designed as a vehicle of publicity as respects contributions and expenditures in public elections to the end that by means of such disclosures of campaign contributions and expenditures fair and honest conduct of an election would be secured (*Matter of Woodbury*, 174 App. Div. 569; *Matter of McLennan*, 65 Misc. 644); a second attending result accomplishes an accounting of unexpended balances. The purity of elections, both before and at the ballot, is the paramount interest.

Time has not yet dimmed the memory as to the sordid revelations of flagrant fraud which was practiced with regard to elections for public office, the spending of vast sums for bribery and general corruption which were furnished by undisclosed interests and in this manner preventing the conducting of fair and honest elections so vital and indispensably necessary to the existence of a democratic form of government. This condition was recognized in *Van Ingen v. Star Co.* (1 App. Div. 429; affd., 157 N. Y. 695), the court saying: " * * * the general course of legislation of late years has recognized the increasing danger to our form of government in the use of large sums of money to influence elections * * *."

In *People ex rel. Stapleton* v. *Bell* (119 N. Y. 175, 178) the court said: " The right of suffrage is one of the most valuable and sacred rights which the Constitution has conferred upon the citizen of the State."

The Federal Corrupt Practices Act (U. S. Code, tit. 2, chap. 8) was enacted by Congress to curb dishonest election practices; the several States of the Union have enacted statutes of similar import as article 13 of the Election Law; and it will be noted that they all have as a fundamental feature the publicity of political contributions and expenditures and the general requirement that these be listed with informative details. (See 3 Fed. Stat. Ann. [2d ed.] 1917, p. 120 and notes.)

Upon comparison, sections 242 and 244 of the Federal Corrupt Practices Act and sections 321, 322-a and 323 of the Election Law will be found to embody strikingly similar features; their objects and purposes are plainly alike and the principal object is to compel a true and fair disclosure by sworn statement of political contributions and expenditures; the purpose and object of the legislation are manifest and are not to be thwarted or defeated by any intentional failure of compliance; nor will the court countenance it; the statement filed must represent and indicate a *bona fide* endeavor at substantial compliance. Such statutes are remedial and are to be given a liberal construction (*Umbel's Election*, 231

Penn. St. 94; 80 A. 541); a like intention is evidenced by the phrase in section 330 of the Election Law, that in exercising the summary jurisdiction conferred thereby as to any of the subjects set forth in said provision it " shall be construed liberally." I assume this is no more than to mean that if the statement filed is in substantial compliance with the requirements of the statute it is then within the spirit and intent of the act.

The language of the statute, section 321, is simple, direct and unambiguous:

" § 321. Statements of campaign receipts and expenditures by political committee. The treasurer of every political committee which, or any officer, member or agent of which, in connection with any election, receives or expends any money or its equivalent or incurs any liability to pay money or its equivalent shall file sworn statements, as prescribed by section three hundred twenty-two-a, setting forth all the receipts, expenditures and liability of the committee, and of every officer, member and other person in its behalf. Such statements shall include the amount received, the name and address of the person from whom received or the name of the political unit represented by the committee from which received, the date of its receipt, the amount of every expenditure, the name and address of the person to whom it was made or the name of and the political unit represented by the committee to which it was made, and the date thereof; and unless such expenditure shall have been made to another political committee they shall state clearly the purpose of such expenditure. Expenditures in sums under five dollars need not be specifically accounted for by separate items, except in the case of payments made for account of or to political workers, watchers or messengers."

In *Matter of Woodbury (supra)* the court said that " The statute should have a liberal and fair interpretation in order to carry out its obvious intent." That the provisions of the statute must be executed in a practical manner is also recognized in *Matter of McLennan (supra)*, where it is said: " At the same time, if such a thing is possible, the construction should be reasonable, so as not to prevent or unduly embarrass the conduct of political campaigns under our present system." It must follow from this that the records required to be filed must not be such as obtain with regard to the conduct of a business or such as meet the test of accepted bookkeeping systems. If enough information is forthcoming to enable the items to be checked and traced, it is adequate. *(Matter of McLennan, supra.)* What the statute contemplates is a fair, comprehensive disclosure.

A listing like " publicity " or " miscellaneous," though general, is sufficient, if the date, name and address of person paid, the amount, and a brief description of the expenditure is given; precise details are not required. As to the item of " petty cash: " Petty means small, minor, inconsiderable. Just what will come within that definition must depend upon the particular circumstances. During a presidential election an item of $500 listed as petty cash is not necessarily outside the definition. However, the name and address of the person to whom the sum was given must be set forth, with a brief statement of the nature of the expenditure; a designation like " Headquarters " is not a compliance with the statute. The respondent Farkas is directed to file a further supplemental statement giving the true name and address of such person or persons receiving petty cash and designated as " Headquarters," and a brief statement of the nature of such expenditures; he is also directed to give the name and address of each watcher and the amount paid to each one, and the date.

I have examined the statements originally filed by the respondents; as filed they are not sufficiently informative; in this connection attention is directed to the statement filed by the respondent Lyeth; it is not sworn to but is merely acknowledged; this is insufficient; it must be sworn to as expressly required by the statute. A supplemental statement has been filed by the respondent Farkas; no supplemental statement has been filed by the respondent Lyeth.

Checking the supplemental statement filed by the respondent Farkas with the original statement filed by him, it is my conclusion that the supplemental statement is a substantial compliance with the statute except as otherwise herein indicated. As to the item of $1,340.57, comprising a group of sixteen items for the ten weeks' period August 13, 1940, to October 26, 1940, it is sufficiently detailed; I do not see how it can be more adequately set forth considering the character of the items. In the supplemental statement this respondent has given, where able to do so, the addresses of the recipients listed under the item " payroll."

As to the respondent Lyeth, he is directed to file a sworn supplemental statement and he will set forth therein the purposes of the expenditures for the period August 13, 1940, to October 8, 1940, totaling the sum of $3,450, for which there is no explanation given in the statement as filed; he is also directed to set forth the names and addresses of the watchers and the amounts paid to each one, and the date; he will also exhibit to the attorneys for the petitioners the canceled check or voucher showing contribution of $500 to the Willkie club. He will also set out in the supplemental statement the items listed in the affidavit of Mary Karlik, verified July 10, 1941.

The court will not proceed further for the present, as it sees no reason for doing so or for conducting a further judicial audit until the supplemental financial statements have been filed; the petitioner will then have an opportunity to examine them and thereupon advise the court if they are satisfactory, in which event the proceeding can be withdrawn; if found unsatisfactory the petitioners may then file specifications of objections which the court will then rule upon as to their sufficiency, so that the investigation by the court, if made, will be confined and limited to specific items only; there will be no omnibus inquiry. (*Matter of Woodbury, supra.*) Provisional disposition as indicated. Settle order on one day's notice.