## S. G. HEISKELL *v.* J. L. LOWE.

### (*Knoxville.*   September Term, 1912.)

1. ELECTIONS.  Only one publication of campaign and election expenses in Knoxville elections, and that after final statement, and within three days after election.

A statute (Private Acts 1911, ch. 498, sec. 30), requiring every candidate for an elective office, in the city of Knoxville, the day before the election and within three days after the election, to file with the recorder and publish, at least once in a daily newspaper, a sworn statement of all his campaign and election expenses itemized, and providing that any candidate failing to do so shall be disqualified to hold the office, requires only one publication of campaign and election expenses which must be made after the preparation and filing of the last statement of expenses, and within three days after the election. (*Post, pp.* 488, 489, 492, 493.)

Acts cited and construed:  Private Acts 1911, ch. 498, sec. 30.

2. SAME.  Statute requiring candidates to file and publish statements of election expenses in Knoxville elections did not take effect as to candidates for mayor until the fourth Saturday in January, 1912.

The statute (section 30 of Private Acts 1911, ch. 498) requiring every candidate for an elective office, in the city of Knoxville, to file and publish a sworn statement of campaign and election expenses itemized, and for his failure to do so, disqualifying him to hold the office, under section 44 of said act, providing that, for the purpose of giving notice of election, the act shall take effect December 30, 1911; that, for the purpose of electing the first board of commissioners, it shall take effect on the third Saturday in January, 1912; and, for other purposes, it shall take effect on the fourth Saturday in January, 1912, does not apply to the election of a mayor on the third Saturday in Jan-

uary, 1912, because said requirement did not become operative
or effective until the fourth Saturday in January, 1912; and,
therefore, a candidate for mayor of said city at an election held
on the third Saturday in January, 1912, did not disqualify him-
self to hold the office, by his failure to publish a statement of
his campaign expenses on the day before such election. (*Post,
pp.* 488, 489, 490, 491, 492, 493.)

Acts cited and construed:   Private Acts 1911, ch. 498, secs. 30
and 44.

3.  **STATUTES.  No retrospective effect, when taking effect at a
    fixed future date.**
    A statute does not have a retrospective effect when, by its terms,
    it is to take effect at a fixed future date. (*Post, pp.* 491, 492.)

Cases cited and approved:   Dugger v. Insurance Co., 95 Tenn.,
245, 249; Railroad v. State, 81 Tex., 572-598.

4.  **SAME.  To be construed as prospective, unless retrospective by
    express provision or necessary implication.**
    It is a rule of statutory construction that all statutes are to be
    construed as having only a prospective operation, unless the
    purpose and intention of the legislature to give them a retro-
    spective effect is expressly declared, or is necessarily implied
    from the language used; and doubts must be resolved against
    the retrospective effect. (*Post, pp.* 491, 492.)

Cases cited and approved:   Dugger v. Insurance Co., 95 Tenn.,
245, 249; Railroad v. State, 81 Tex., 572-598.

5.  **ELECTIONS.  Publication of election expenses within three
    days after election, embodying a former statement published on
    election day, complies with statute for Knoxville elections,
    when.**
    Under the statute (Private Acts 1911, ch. 498, sec. 30), requiring
    every candidate for an elective office in the city of Knoxville
    to publish a sworn statement of all his campaign and election
    expenses within three days after the election, the publication
    of a statement on the day of the election and the publication of

Heiskell v. Lowe.

another statement on the third day after the election, referring to and adopting or embodying the former statement and setting out one additional item, was sufficient.   (*Post, pp.* 488, 493.)

Acts cited and construed:   Private Acts 1911, ch. 498, sec. 30.

6. **SAME.   Required itemized statement of campaign and election expenses of a candidate in Knoxville election need not itemize a sum given to charity, when.**

Under the statute (Private Acts 1911, ch. 498, sec. 30), requiring every candidate for an elective office in the city of Knoxville to file and publish a sworn statement of all his campaign and election expenses itemized, it was not necessary to include in the statement a sum given by a candidate for charitable purposes, and the unnecessary inclusion of such sum in the statement does not necessitate the giving of the items and details thereof.   (*Post, pp.* 488, 493.)

Acts cited and construed: Private Acts 1911, ch. 498, sec. 30.

7. **SAME.   Filed and published statement of candidate's campaign and election expenses need not give details of expenditures of his contribution to campaign fund of his party or ticket in Knoxville election, when.**

Under a statute (Private Acts 1911, ch. 498, sec. 30) requiring every candidate for an elective office in the city of Knoxville to file and publish a sworn statement of all his campaign and election expenses itemized, and by whom such funds are contributed, where a number of offices were filled at an election, and one candidate's contribution to the campaign fund of his party or ticket was stated to be made for a proper and legitimate purpose, he was not required, in his statement, to give the sources of the balance of such fund contributed by others, or the details of its expenditure, in the absence of any showing that he had any control or management of the fund.   (*Post, pp.* 488, 493-496, 497, 498.)

Acts cited and construed: Private Acts 1911, ch. 498, sec. 30.

8. SAME. Candidate's statement of election expenses contain-
   ing an item of fifteen dollars given to a named person, without
   showing its purpose, is a compliance with statute.

   Under the statute (Private Acts 1911, ch. 498, sec. 30) requiring
   every candidate for an elective office in the city of Knoxville
   to file and publish a sworn itemized statement of all his cam-
   paign and election expenses, and for his failure to do so, dis-
   qualifying him to hold the office, the failure of the statement
   to show the purpose for which a single item of fifteen dollars
   given to a named individual does not render the candidate in-
   eligible to the office. (*Post, pp.* 488, 496.)

   Acts cited and construed: Private Acts 1911, ch. 498, sec. 30.

9. SAME. In election contests general charges of fraud, without
   detailing particular acts and incidents of fraud, are insufficient.

   In election contests, general charges of fraud in the bill will be
   disregarded, unless the alleged acts of fraud are set out in
   detail; for a general charge of fraud, in the entire absence of
   any specific allegation as to the particulars and incidents of
   the fraud, is insufficient. (*Post, pp.* 496, 497.)

10. STATUTES. No room for construction, if there be no doubt of
    legislative intent and purpose.

    There is no room for the construction of a statute, when, from the
    language used in it, there can be no doubt of the intention
    and purpose of the legislature in its enactment. (*Post, pp.*
    498-500.)

    Cases cited and approved: Kirk v. State, 1 Cold., 346-348; State,
    ex rel., v. Manson, 105 Tenn., 237, 238.

### HEADNOTES ON DISSENTING OPINION.

11. CONTESTED ELECTIONS. Petition by voter to declare elec-
    tion void presents a case of contested election.

    A petition filed in the circuit court, by one not a candidate in
    the election, but a citizen, taxpayer, and voter, against the can-
    didate appearing to be elected mayor, and the election com-
    missioners, seeking to enjoin the commissioners from issuing

Heiskell v. Lowe.

a certificate of election to such candidate, to enjoin his quali-
fying and assuming the duties of the office, and to declare the
election void upon the ground that the candidate disqualified
himself to hold the office by his failure to file and publish the
statement of his campaign and election expenses, as required
by the constitutional statute contained in Private Acts 1911,
ch. 498, sec. 30, applicable in the city of Knoxville, to the end
that a new election might be held, presents (it is not contro-
verted) an election contest which the petitioner may institute
and maintain, if his contention is supported by the facts, and
the circuit court has jurisdiction of such contest.   (*Post, pp.*
482-484, 488, 500, 501.)

Acts cited and construed: Private Acts 1911, ch. 498, sec. 30.

Cases cited and approved: Marshall v. Kerns, 2 Swan, 68; Lewis
v. Watkins, 3 Lea, 174; Maloney v. Collier, 112 Tenn., 91; Ad-
cock v. Houk, 122 Tenn., 275; Taylor v. Carr, 125 Tenn., 235.

12. **STATUTES.  Intention prevails over literalism, and is not to
be eluded; construed to be sensible, if possible.**
The fundamental rule of the construction of statutes is that the
real intention appearing from the whole act will always prevail
over the literal use of terms; and a thing which is within the
letter of a statute is not within the statute, unless it be within
the intention of the lawmakers; and such construction ought to
be put upon it as will not suffer it to be eluded.  Statutes must
be construed, if possible, so as to make them sensible, and to
effect and carry out the purposes for which they were enacted.
It is not to be presumed that the lawmakers will pass a de-
fective and insensible act.   The courts will restrain the lang-
uage of a statute so as to avoid the stultification of the legis-
lature and absurd consequences.    *(Post, pp.* 503, 504, 509-512.)

Cases cited and approved: Gold v. Fite, 2 Bax., 248, 249; Brown
v. Hamlett, 8 Lea, 735; Wise v. Morgan, 101 Tenn., 273; Maxey
v. Powers, 117 Tenn., 403; People v. Columbia Co., 43 N. Y.,
130.

13. SAME. Statute takes effect as to mayor under provision fixing time as to commissioners because he is included in board of commissioners; and independent of such inclusion, to avoid absurdities.

A statute (Private Acts 1911, ch. 498), by sections 3, 4, 5, 6, 30, 39, and 45 thereof, providing for the election of a board of commissioners, to consist of a mayor and four commissioners, in the city of Knoxville, and prescribing precautions deemed necessary to secure fair elections, and to prevent, detect, and expose fraud, corruption and bribery of electors, and by section 44 thereof providing that, for the purpose of electing the first board of commissioners, the act shall take effect on the third Saturday in January, 1912, and for all other purposes shall take effect on the fourth Saturday in January, 1912, takes effect on the third Saturday in January, 1912, as to the requirements of a statement of campaign and election expenses to be made by the candidate for mayor as well as the commissioners, because the mayor is expressly classed as one of the commissioners; and, independent of such express provision, it is held so to take effect to avoid the stultification of the legislature and absurd consequences, and in accordance with the rules of construction stated in head note 12. (*Post, pp.* 504-517.)

Acts cited and construed: Private Acts 1911, ch. 498, secs. 3, 4, 5, 6, 30, 39, 44, and 45.

Cases cited and approved: Wise v. Morgan, 101 Tenn., 273; Maxey v. Powers, 117 Tenn., 403.

14. SAME. Candidate's statement of campaign and election expenses that is fatally defective for its want of itemization and failure to show how money was spent.

Under the statute (Private Acts 1911, ch. 498, sec. 30), requiring every candidate for an elective office in the city of Knoxville to file and publish a sworn statement of all his campaign and election expenses itemized, and by whom such funds are contributed, a candidate's statement that he contributed five hundred dollars to the Democratic campaign committee, to be

Heiskell v. Lowe.

used by it in bearing the legitimate expenses of the campaign, such as office rent, clerk hire, printers' bills, postage, brass bands, etc., and that he gave fifteen dollars to a certain named person, without any explanation for what purpose it was paid or used, is not a compliance with the statute and is fatally defective, because it does not contain the itemization required, and does not state how the money was used by the campaign committee as the agent of the candidate; and the statement is further fatally defective in its omission to state by whom was contributed the sum of ten thousand dollars admitted to have been contributed to the campaign committee, and how it was used and spent by such committee as the agents of the candidate. (*Post, pp.* 484, 487, 488, 517, 518, 520, 521.)

Cases cited and approved: In re Umbel, 231 Pa., 94; Healy v. State, 115 Md., 377; State v. Good, 8 Ohio Dec., 401.

15. **SAME.** Statement of campaign and election expenses in Knoxville elections must be filed and published, one before and the other after the election, and each must be published at least once.

The statute (Private Acts 1911, ch. 498, sec. 30), requiring that "every candidate for an elective office . . . in the city of Knoxville shall, the day before the election and within three days after the election, file with the recorder and publish at least once in a daily newspaper his sworn statement of all his campaign and election expenses," etc., means that such statement must be filed and published the day before the election and that another statement must be filed and published within three days after the election, and that each statement must be published at least once; and that the publication of both statements after the election is not a compliance with the statute. (*Post, pp.* 488, 501, 506-508, 523.)

---

FROM KNOX.

---

126 Tenn. 31

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals and by that Court transferred to the Supreme Court.—VON A. HUFFAKER, Special Circuit Judge.

CORNICK, FRANTZ & MCCONNELL, PICKLE, TURNER & KENNERLY, and NOBLE SMITHSON, for Heiskell.

SHIELDS, CATES & MOUNTCASTLE, GREEN, WEBB & TATE, J. B. WRIGHT, J. R. PENLAND, WRIGHT & JONES, and LUCKY, ANDREWS & FOWLER, for Lowe.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

James L. Lowe, a resident, citizen, taxpayer, and duly registered voter of the city of Knoxville, Knox county, Tenn., filed a petition on his own behalf in the circuit court aforesaid against Samuel G. Heiskell, individually, and against R. A. Brown, John D. Caldwell, and H. T. Cooper, as election commissioners of and for the county of Knox. The petition recited the passage of chapter 498 as published in the Private Acts of the General Assembly of Tennessee of the Year 1911; that, while published with the private acts, it was, in fact, by its terms, a public act, and an amendment of chapter 207 of the Acts of 1907; that, under the terms of the act of 1911, the election commissioners had held an election by the qualified voters of the city of Knoxville for the purpose of electing a mayor and four commissioners for the city, at which election defendant Samuel G.

Heiskell v. Lowe.

Heiskell, John E. McMillan, and John I. Simpson were, respectively, each a candidate for the office of mayor; that the election returns showed that Heiskell had received 2,595, McMillan 2,581, and Simpson 37 votes; and that Heiskell was thereupon demanding of the election commissioners a certificate showing and declaring him to have been elected to and entitled to hold the office of mayor of the city of Knoxville.

It recited that Heiskell had disqualified himself from holding the office of mayor by a noncompliance with the terms of section 30, chapter 498, of the Acts of 1911, by which each candidate for mayor was required, on the day before the election and within three days after the election, to file with the recorder and publish, at least once, in a daily newspaper of daily circulation, his sworn statement of all his campaign and election expenses itemized, and by whom such funds "are contributed," upon pain of being disqualified from holding the office he "seeks or has been elected to" in the event of failure so to do.

It recited that Heiskell did file with the recorder, between the hours of six and seven o'clock p. m. of the day before the election, a statement which, it avers, is not in compliance with section 30, but that no publication of the statement so filed was made on the day before the election; that it was, however, published on the morning of election day; and that he did make publication of a statement on January 22, 1912, purporting to show his campaign and election expenses. Copies of each of these statements are filed as exhibits with the petition,

and they show that they were intended to be considered as a compliance with section 30, but in each of them it is made to appear that Mr. Heiskell contended that section 30 of the act, because of the provisions of section 44 of the act, did not go in effect until the fourth Saturday in January, 1912, and therefore he was under no legal obligation to file or publish either of the statements. The petition avers that each of the statements was insufficient as a compliance with section 30, in that there was no itemization in either of them as required by section 30, and in that, it averred, there was contributed to a so-called "Democratic campaign fund" and used in aid of the election of Samuel G. Heiskell "many thousands of dollars," namely, ten thousand dollars, or more.

The petition prayed for process, waived the answer of Heiskell under oath, and prayed for a "decree" that he had disqualified himself from holding the office of mayor for and during the term for which he was a candidate, and that the said election for said office of mayor be declared void, and such result certified to the election commissioners of Knox county, Tenn., to the end that they may hold another election, and for a preliminary injunction restraining defendant Heiskell from receiving a certificate of election, and from taking the oath of office, or qualifying as mayor, or performing any duties or functions of said office, and that the election commissioners be enjoined from issuing a certificate of election to the defendant Heiskell, or recognizing him as legally elected as an officer and entitled to the certificate of

election, upon the ground that he is disqualified from receiving the certificate of election thereto. The petition also prayed for general relief, etc.

The petition was filed January 23, 1912, and, on the same day the preliminary writ of injunction was granted as prayed. Defendants were duly served with process, and the defendant Heiskell demurred to the jurisdiction of the court on several grounds. This demurrer was overruled, but the court modified the injunction, so as to restrain defendant Heiskell from taking and holding the office of mayor under the election held the 20th day of January, 1912, and not for a term of four years from that date. A motion to dissolve the injunction on several grounds was made by defendant Heiskell, which was, likewise, overruled by the court. Whereupon, defendant Heiskell declining to further plead, the court, because of the failure of defendant Heiskell to comply with section 30 of the act of 1911, finally adjudged and decreed that the election of January 20, 1912, was void; that Heiskell had disqualified himself from being inducted into the office of mayor under that election, but no further or otherwise; that he be enjoined from receiving a certificate of election from defendant commissioners, and from being inducted into office under the election; that there was a vacancy in the office of mayor of Knoxville, which fact the clerk of the circuit court was directed to certify to the board of commissioners of the city of Knoxville, to the end that such vacancy be filled as provided by section 12 of the act of 1911; that

Heiskell pay the costs of the cause, for which execution was awarded.

Heiskell prayed and perfected an appeal to the court of civil appeals. Lowe prayed an appeal from so much of the decree as was in accord with the prayer of his petition to the supreme court of this State. Such appeal was refused, but he was granted such appeal to the court of civil appeals. In that court, Lowe moved to transfer the cause to this court, which motion was granted. So the cause is before us on assignment of error by each of the parties.

The demurrer to the jurisdiction of the circuit court was upon the following grounds:

First, that the petition presented neither an election contest nor a *quo warranto* proceeding, but merely a *quia timet* action, of which that court had no jurisdiction.

Second, that section 30 of the act of 1911 was not in force and had no application to the election of January 20, 1912.

Third, that, if section 30 was in force at the date of election, the exhibits to the petition showed a compliance therewith.

Fourth, that the circuit court was without power in any aspect of the case to restrain the action of the election commissioners in certifying the result of the election, and that no grounds were stated in the petition for any such relief. The assignments of error made on behalf of defendant Heiskell in this court raise the same questions presented by the demurrer. We will consider

the case without discussing *seriatim* the assignments of error.

It is said that Mr. Heiskell rendered himself ineligible to the office of mayor of Knoxville by his failure to comply with the provisions of section 30 of chapter 498 of the Private Acts of 1911.

It is alleged that, under the requirements of this section, every candidate for an elective office was required to file, on the day before election, with the recorder, a statement of his campaign and election expenses; that he was required to file such statement with the recorder within three days after election; that he was required to make publication of such statements on the day before election, and also required to make publication within three days after election; that these statements were required to be itemized, and to show by whom the funds used in the campaign were contributed, and the penalty for failure to comply with these requirements was disqualification from holding the office which the candidate sought or had been elected to.

It is charged in the petition that Mr. Heiskell made no statement on the day before election, but it is conceded that he made such a publication within three days after the election.

It is also charged that there was no sufficient compliance with the statute in the itemization of his expenses.

A further charge of the petition is that a large campaign fund, amounting to $10,000 or more, was used in behalf of Mr. Heiskell's interests in this election, and

that he was required, under a proper construction of the act, to file a statement and make publication thereof in respect to the collection and expenditure of this campaign fund.

So that the three particulars in which the defendant is alleged to have violated this act are that (1) he failed to make publication on the day before election; (2) he failed to properly itemize the statements filed and published by him; (3) he failed to make any statement with reference to the democratic campaign fund charged to have been used in his behalf.

It appears that on the day before election Mr. Heiskell filed a statement, heretofore referred to, which was printed in the morning paper election day, and within three days after election he filed the other statement heretofore mentioned, which was also printed in the morning paper.

The language of section 30 of the act upon which petitioner relies is as follows:

"That every candidate for an elective office and every elective officer of the city of Knoxville shall, the day before election, and within three days after the election, file with the recorder, and publish at least once, in a daily newspaper, of daily circulation, a sworn statement of all his campaign and election expenses, itemized, and by whom such funds are contributed; and any candidate for an elective office and any elective officer failing to comply with the requirements of this act shall be disqualified from holding the office he seeks or has been elected to."

Heiskell v. Lowe.

Giving to the foregoing language its most natural construction, it would seem that it requires only one publication of campaign and election expenses. The provision is that the candidate shall "publish at least once, in a daily newspaper, of daily circulation, his sworn statement," etc.

It is provided that he shall "file" a statement "on the day before election, and within three days after the election," and that he shall "publish" a statement "at least once," etc.

As to the publication of these statements, there is no requirement, except that such publication be made at least once, in a daily newspaper, of daily circulation. Inasmuch, therefore, as only one publication is required, it could not have been intended that it should be made until after the preparation and filing of the last statement of expenses; that is, within three days after the election.

If, however, we give the act the other construction, and hold it meant that candidates, on the day before election, should file and publish a statement, and within three days after the election should file and publish a statement, still the defendant here would not be at fault, under this statute, in failing to make such publication of expenses on the day before this election; for, by its own language, this act was not in effect in this particular on that day.

Section 44 of the act is as follows:

"That for the purpose of giving the requisite legal

notice of twenty days of the general municipal election, at which shall be elected the first board of commissioners, as provided herewith, it shall take effect from and after December 30, 1911. That for the purpose of electing the first board of commissioners, as provided herewith it shall take effect on the third Saturday in January, 1912, and, for other purposes, it shall take effect and become operative on the fourth Saturday, in January, 1912, public welfare requiring it."

"An act can have no force until it becomes a law and takes effect." Lewis' Sutherland, Stat. Const., sec. 182.

On December 30, 1911, this act went into effect for the purpose of giving the requisite twenty days' notice of the election.

On the third Saturday in January, 1912, it went into effect for the purpose of electing the first board of commissioners.

On the fourth Saturday in January, 1912, it went into effect for all other purposes.

On the day before the third Saturday in January, the day before the election, when it is alleged defendant failed to comply with the provisions as to the publication of expenses, the act had gone into effect in only one particular; that is, for the purpose of giving the twenty days' notice of the election. For no other purpose did the act become effective until election day, the third Saturday in January. Defendant, therefore, cannot be held to have violated section 30 of the act by anything he did, or failed to do, on the day preceding the

third Saturday in January.  It was not in effect on the day before the third Saturday in January.

A statute does not have a retrospective effect when, by its terms, it is to take effect at a fixed future date.  36 Cyc. 1204.

It is a rule of statutory construction that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used.  In every case of doubt, the doubt must be solved against the retrospective effect.  36 Cyc. 1205.

"The general rule is that statutes will be construed to operate prospectively only, unless an intention to the contrary clearly appears.  It is said that a law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression."  Lewis' Sutherland, Stat. Const., 642.

Many illustrations of this rule are collected in the two works referred to.  An accurate statement of the rule is by the supreme court of Texas, thus:

"We apprehend that no universal rule of construction can be adopted when a statute which makes a distinction between future and past transactions is passed upon one day, to take effect upon another; but we think the general rule is that a statute speaks from the time it becomes a law, and that what has occurred between the date of its passage and the time it took effect is deemed, with respect to the statute, a past transaction. This is in analogy to the rule for the construction of

wills. This rule should not be applied when the language of the act shows a contrary intention." *G., H. & S. A. R. R. Co.* v. *State,* 81 Tex., 572-598, 17 S. W., 67, 72, cited in Lewis' Sutherland, Stat. Const., sec. 183.

It cannot be said that the legislature intended any part of this act to go into effect prior to the third Saturday in January, 1912, except as the act itself provided. The express enactment that it should go into effect for the purpose of giving notice of election on December 30, indicated by this expression of the legislative will the exclusion of any idea that it should then go into effect for other purposes.

Before passing from the contention that this section, although, by the terms of the act, it did not go into effect until the third Saturday in January, 1912, imposed duties and obligations upon the defendant as of the day before the third Saturday in January, it may be well to refer to former language of this court:

"The rule is so well settled it is hardly worth while, at this late date, to cite authorities in support of it, that in construing an act of the legislature the courts will always give it prospective and not retroactive force, unless the latter effect is expressed by clear and positive command, or it is to be inferred by necessary or unequivocal and unavoidable implication." *Dugger* v. *Insurance Co.,* 95 Tenn., 245-249, 32 S. W., 5, 6 (28 L. R. A., 796).

So, while we doubt if, upon a proper construction of this act, a candidate could be required to make publication of his campaign expenses on the day before election,

even if we are mistaken, no such requirement could be made of the candidate in this election, because section 30 was not in force on the day preceding this election.

Publication was made by Mr. Heiskell within three days after the election, setting out one item not included in the statement published election day, and referring to and adopting the former statement and publication then made. We think that these two publications, the one on the day of election and the other on the third day after election, referring to and embodying the former, was a sufficient compliance with the provision that publication should be made within three days after the election.

Considering next the character of these statements:

As to the itemization of the statement filed on the day before election, we think there can be no question made upon the sufficiency of detail in the second paragraph; that is, as to the sums paid stenographers.

Regarding the sum given for charitable purposes, since it was in no wise connected with the campaign, there was no necessity for including it. There being no necessity for making it a part of the statement, of course, there could be no necessity for setting out the items and details.

Petitioner's criticism is directed at the item of $500 contributed by the candidate to the Democratic campaign fund, and it is said there is no effort to make it appear for what purpose this sum was ultimately used. From the statement published, this sum appears to have

been given with the intention that it should be applied to such expenses as office rent, clerk hire, printers' bills, postage, and brass bands; but it is urged that the statement should have gone further, and have shown as a matter of fact how this money was actually used. The petition indicates that there were five offices contested for in this election, and that Mr. Heiskell was only one of five on his ticket. It is charged that there was contributed to the Democratic campaign fund, and used to aid in the election of Samuel G. Heiskell, many thousands of dollars, namely, $10,000 or more; and it is further said in the petition that it was the intention of this act to require every candidate to show, not only what he himself had expended, but what he had caused to be expended.

According to the statements of Mr. Heiskell, none of the money personally expended by him was contributed to him; and according to his statement, his contribution to the Democratic campaign fund was made for proper and legitimate purposes.

Can he be required to go into details as to the expenditure of the balance of the Democratic campaign fund and the sources from which it came, in the absence of a charge in the petition that he had some control over the distribution of these funds?

The petition contained no allegation whatever to the effect that Mr. Heiskell had any control or management of the Democratic campaign fund. Any statement of this import seems to have been avoided. On the contrary, reference is expressly made to "the manager

of said funds," or "the agent by which it was disbursed," and there is no averment that Heiskell directed or advised with such agent.   It does not appear in the petition that Heiskell aided or participated in the collection or expenditure of this fund at all.

As a matter of course, a candidate should not be allowed to hide behind a campaign manager and escape the provisions of this act.   If it was charged or made to appear that the control of this campaign fund was directed by Heiskell, he would be required, under the act, to go into the details of its expenditure and explain the sources from which it came.   In a campaign, however, made in behalf of five candidates, where the campaign fund is controlled by agents or managers, we do not think it was the intention of the act to make any one of the candidates account for the expenditure of the entire campaign fund, handled by others, when there is no charge that such candidate advised, directed, or participated in the distribution of the fund.   The mere fact that the fund was used for his benefit does not place him within the purview of the statute, unless to  him there be imputed some control over the fund.   The campaign manager is a well-known figure in every election. To him are intrusted the details and the financing of the campaign.   Where several candidates are running on a particular slate or ticket, it is almost universally the custom to intrust their common interests to the direction of some political manager.   Candidates seldom have a definite idea of the particulars relating to their campaign expenses.   They cannot be expected to have

in many cases. They have no control over these expenditures, and, when information is desired with reference to such expenses, it is from the managers that such information is sought, by investigating committees and others. This was a well-known condition of affairs existing at the time of the passage of this act, and we do not believe it was intended by the legislature to require candidates for office, under this statute, to go into the details of expenditures which they did not direct. If such was the intention, the act should have been broader in its terms. Had it been charged that this campaign fund was collected and disbursed under the supervision or advice of Mr. Heiskell, the case would be different; but, in the absence of such a charge, the expenses of the "Democratic campaign" cannot be called "his campaign and election expenses," within the meaning of the act.

Coming to the statement filed and published after the election, there appears to be only one additional item thereon, namely, $15 to Mr. Wood. This is somewhat indefinite; but it is the statement of a single item, and the name of the person to whom it was given is set out. At any rate, it is a small matter, and should not be allowed to affect the result.

This petition concedes that Mr. Heiskell was elected to the office of mayor of the city of Knoxville by a majority of fourteen votes. There is a general charge of fraud contained in the bill, but an entire absence of any specific averment as to the particulars and incidents of the fraud. For many years, this court has

Heiskell v. Lowe.

consistently refused to consider charges of fraud in election contests, unless the alleged acts of fraud were set out in detail. This is merely the enforcement of a rule of good pleading, although a wise and necessary rule. There is seldom an election held after which there are not made, by disappointed persons, charges of fraud. Such charges are so common as to excite little public interest, and are attributed to disappointment and chagrin. Such indefinite charges are never considered by the courts.

In this case it may be observed that the unsuccessful candidate, although defeated by a majority of only fourteen votes, is not before us making complaint. It is a serious thing for any court to interfere with the result of an election, and set aside what appears to be the expression of the popular will. No court will do so on slight ground, and no court will enter upon the consideration of such a matter on vague and indefinite pleadings. Contestant's right must be clear, and his case specifically averred.

In this case, in the absence of specific averment that Mr. Heiskell directed and controlled the expenditure of this campaign fund, when he was only one of five candidates in whose behalf it was raised, and when no knowledge of its sources or of its application is imputed to him by the petition, we do not think his right to the office to which he has been elected can be questioned by reason of his failure to itemize such expenditures and make publication of the result.

126 Tenn. 32

In the absence of an allegation that he had some supervision over the collection and expenditure of this campaign fund, he cannot be required to go into the details of either.

In conclusion, and reverting to the question of the proper construction of this statute, it is our opinion that, by the plain terms of section 44 of the act, section 30 thereof was not in force and effect until the fourth Saturday in January, 1912, one week after Mr. Heiskell was elected. There is no room for a construction of section 44 of the act, because, from the language used in it, there can be no doubt about the intention and purpose of the legislature in its enactment. And to sustain this view we quote the following from an opinion of this court delivered by Judge McKinney:

"Now, what is the doctrine in regard to the interpretation of statutes, as maintained by the most approved authorities?     Blackstone says (1 Comm., 91) that acts of Parliament that are impossible to be performed are of no validity; and if there arise out of them, collaterally, absured consequences, manifestly contradictory to reason, they are, with regard to those collateral consequences, void. But he adds: 'If Parliament will positively enact a thing to be done which is unreasonable, I know of no power, in the ordinary forms of the constitution, that is vested with authority to control it.' Christian, in his note upon this passage, questions, and perhaps justly, its correctness in part. He says: 'If an act of Parliament is clearly and unequivocally expressed, I conceive it is neither void in

its direct nor collateral consequences, however absurd and unreasonable they may appear. If the expression will admit of doubt, it will not then be presumed that that construction can be agreeable to the intention of the legislature, the consequences of which are unreasonable; but, where the signification of a statute is manifest, no authority less than that of Parliament can restrain its operation.' "

"In Dwarris on Statutes, 702, 703, it is said: 'Where the legislature has used words of plain and definite import, it would be very dangerous to put upon them a construction which would amount to holding that the legislature did not mean what it had expressed.' In a recent American work on Statutory Law, it is said that the intention of the legislature is to be learned from the words it has used; . . . and, if that intention is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and the judges are not at liberty, on consideration of policy or hardship, to depart from the words of the statute; that they have no right to make exceptions or insert qualifications, however abstract justice or the justice of the particular case may seem to require it. Sedgw. on Stat. & Const. Law, 295."

"It is obvious that to do so would be to transcend the boundary separating judicial construction from judicial legislation. It is a recognized principle of exposition, too, that it is not allowable to interpret what has no need of interpretation." *Kirk* v. *State,* 1 Cold., 346-348.

In another case, this court said:

"If the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation." *State, ex rel.,* v. *Manson,* 105 Tenn., 237, 238, 58 S. W., 319, 320.

From what has been said, it follows that the suit of the petitioner is dismissed, and the injunction thereon issued is dissolved, and petitioner and his sureties will pay the costs of the cause.

DISSENTING OPINION DELIVERED BY MR. CHIEF JUSTICE SHIELDS (WITH WHOM MR. JUSTICE NEIL CONCURRED.)

I do not agree with the conclusion of the majority in this case, as expressed in the opinion prepared and delivered by Mr. Justice Buchanan, and dissent therefrom.

It is not controverted that this case presents an election contest, of which the circuit court of Knox county had jurisdiction, and which the petitioner, J. L. Lowe, as a citizen, voter, and taxpayer of the municipality of Knoxville, had the right to bring and maintain, provided his contention was supported by the facts, which are not controverted; the case being before us upon petition and demurrer, and sound in law. These propositions are abundantly established by the repeated decisions of this court. *Adcock* v. *Houk,* 122 Tenn., 275, 122 S. W., 979; *Taylor* v. *Carr,* 125 Tenn., 235, 141 S. W., 745; *Marshall* v. *Kerns,* 2 Swan, 68; *Lewis* v. *Watkins,* 3 Lea, 174; *Maloney* v. *Collier,* 112 Tenn., 91, 83 S. W., 667.

It is also uncontroverted that the provision of the charter of the city of Knoxville, granted to it in 1911 (section 30), providing for the publication of campaign and election expenses, and penalizing the failure to comply with it by disqualifying the candidate so failing from holding the office to which he sought to be elected, upon which petitioner's contest is founded, is constitutional and valid, and that a failure to comply with its terms by any candidate, in any election to which this section applies, would be good ground upon which to successfully contest his election.

The opinion of the majority, as I understand it, is predicated upon the conclusion that the charter, and especially section 30, requiring all candidates for city offices to publish in a daily newspaper, the day before the election, a sworn, itemized statement of their campaign expenses, and, within three days after the election, a like statement of their election expenses, was not in force when the election under which the defendant Heiskell claims the office of mayor was held, and that, if it was in force, the section requires only one publication to be made, and that within three days after the election, and that such publication, properly itemized, was made within said time by the defendant, and that for these reasons the demurrer of the defendant must be sustained, and the petition dismissed.

I do not differ with the majority that a statute does not become effective until the time fixed for it to take effect, nor that statutes generally have a prospective effect and will not be given a retrospective effect, unless it

plainly appears that such was the intention of the leg-
islature.    These are questions which have no bearing
on the case, and the discussion of them merely tends to
obscure the real issues presented.

The charter of the city of Knoxville under which the
election being contested was held, and which the court is
called upon to construe in this case, was enacted into a
law by the legislature April 20, and approved July 1,
1911, for the purpose of giving to the city of Knoxville
the improved form of municipal government known as
the "commission" form.    Under the constitution all
statutes take effect forty days after the adjournment
of the legislature, unless otherwise provided for in the
act, and the adjournment of the legislature of 1911 oc-
curred in July of that year.    The election in question
occurred on January 20, 1912, about six months after
the enactment of the law.

When this act was passed, Knoxville had a charter,
and had officers elected thereunder, and it was necessary
for the validity of the new charter that it take effect in
all governmental matters at such time as would not in-
terfere with those then in office during their official
terms, and for this reason a clause postponing its opera-
tion in governmental matters was put in it.    It was
necessary, however, that it go into effect previous to
said time so far as to elect persons to the offices created,
who under said charter were eligible to fill them, in the
manner provided by the new charter, to be installed im-
mediately upon the expiration of the terms of the old

officers, when the charter became effective for governmental purposes.

The question the court must determine is when the charter and its several parts became the law of the municipality.   This is determined by ascertaining the intention of the legislature in the matter, and when that is ascertained, it is controlling upon  the  court. The entire charter must be looked to and considered in ascertaining this intent.

The rules governing the interpretation and construction of statutes are well known and free from doubt.

"The fundamental rule," says Judge Cooper, speaking for the court in the case of *Brown* v. *Hamlett,* 8 Lea, 735, "of construction of all instruments, is that the intention  shall prevail, and for this purpose the whole of the instrument will be looked to.   The real intention will always prevail over the literal use of terms. · Legislative acts fall within the rule, and it has been well said that a thing which is within the letter of a statute is not within the statute, unless it be within the intention of the lawmakers."

And in *Gold* v. *Fite,* 2 Baxt., 248, 249, it is said:  "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter.   And a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers, and such construction ought to be put upon it as does not suffer it to be eluded."

It has also been held that:

"The occasion of the enactment of a law may always be referred to in interpreting and giving effect to it. The court should place itself in the situation of the legislature, ascertain the necessity and probable object of the statute, and then give such construction to the language used as to carry the intention of the legislature into effect, so far as it can be ascertained from the terms of the statute itself." *People* v. *Supervisors of Columbia County,* 43 N. Y., 130.

In *Maxey* v. *Powers,* 117 Tenn., 403, 101 S. W., 187, it is said:

"Statutes must be construed, if possible, so as to make them sensible, and to effect and carry out the purposes for which they are enacted. It is not to be presumed that the lawmakers will pass a defective and insensible act, or one in conflict with the organic law. . . ."

"And, in order to do this," it is further said in that case, "the legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect this intent, general terms will be limited, and those that are narrow expanded."

The charter of Knoxville, the statute we are considering, by sections 3, 4, 5, 6, 30, 39, and 45, provides for the election of a board of commissioners, to consist of a mayor and four commissioners, by the qualified voters of the city at large as therein provided, on the third Saturday in January, 1912, to hold office until September, 1915, when their successors shall be elected.

These sections prescribe that this election shall be held by the election commissioners of Knox county, and that they shall be compensated by the city of Knoxville for their services, and that the commissioners of election shall print the official ballots to be voted, in a certain form; they provide for the preservation of these ballots for one year, the manner in which the election returns shall be canvassed and certified, and make it the duty of the commissioners to place the names of all candidates upon the official ballots who comply with the requirements of the act, and to keep open for inspection, at all reasonable hours, the records relating to said elections, and prohibit the commissioners and other officers from being armed while the election is being held or the returns canvassed, under certain penalties; and they provide "that every act or deed, whether of commission or omission, denounced by law as an offense in the case of regular State election, to be a like offense in the case of any regular or special election held under this act and be punishable in like form and manner." They expressly provide that the "commissioners of elections shall give *bona fide* representation among the election officers to each candidate in said election, and make an equitable and reasonable division of said election officers among the different elements represented by said candidates."

They provide that no person shall be eligible to the office of mayor or commissioner unless he shall have been for at least one year before his election a citizen

of the State and a resident of the city, and that the mayor shall be thirty years of age and the commissioners twenty-five years of years of age.

They further provide (section 6) : "That any candidate for election under this act who shall to any person pay, give, or offer to pay or give, or promise directly or indirectly, money, office, or anything of value, or who shall knowingly suffer any person to do so for the purpose of obtaining the vote or influence of any elector, or of obtaining his vote or influence against an opposing candidate, shall be disqualified as mayor or commissioner, in addition to the other penalties prescribed by law for such offenses."

They further provide, evidently to aid in enforcing the above provision, to prevent bribery and for punishment for it (section 30) : "That every candidate for an elective office and every elective officer of the city of Knoxville shall, the day before the election and within three days after the election, file with the recorder and and publish at least once in a daily newspaper of daily circulation, his sworn statement of all of his campaign and election expenses itemized, and by whom such funds were contributed; and any candidate for an elective office and any elective officer failing to comply with the requirements of this act shall be disqualified from holding the office he seeks or has been elected to."

These provisions relate to matters, for the most part, occurring and to be dated, or which may be done before the day of the election.

These are the election laws of the city of Knoxville, provided by the charter to govern elections for the offices of mayor and commissioners, and prescribing the qualifications of voters in such elections, the eligibility of candidates for the offices of mayor and commissioners, and how they shall qualify themselves to be voted for as candidates for said offices, and penalties for failure to properly do so, the precautions deemed necessary to secure a fair election, and prevent, detect, expose, and punish fraud, corruption, and bribery of electors, and penalties denounced against election officers, voters, and candidates who shall be guilty of corrupt practices and otherwise violate the election laws, and fail to observe and comply with all the provisions of the statute to promote the purity of elections, which was one of the chief and moving causes of the enactment of the new charter and the adoption of the commission form of government.

All these matters relate to the election of mayor and commissioners. There can be no election without some plan or scheme to be pursued, officers to hold it, electors to vote in it, a candidate to be voted for, and all are necessary, integral parts of an election, and a provision in regard to an election under the charter necessarily covers and includes them all, without specially mentioning any or each of them.

The provision of the charter providing when it shall take effect is section 44, and is in these words: "Be it further enacted, that for the purpose of giving the requisite legal notice of twenty days of the general

municipal election, at which shall be elected the first
board of commissioners provided for herein, this act
shall take effect from and after December 30, 1911;
that for the purpose of electing the first board of com-
missioners, as provided herein, it shall take effect on the
third Saturday in January, 1912, and for all other pur-
poses it shall take effect and become operative on the
fourth Saturday in January, 1912, the public welfare
requiring it."

The particular clause of that section now to be con-
strued is as follows:

"That for the purpose of electing the first board of
commissioners, as provided herein, it [the charter]
shall take effect on the third Saturday in January, 1912,
and for the all other purposes it shall take effect and
become operative on the fourth Saturday in January,
1912."

The majority hold, as I understand the opinion, that
this clause makes effective the provisions of the charter
for holding an election on the day named of the first
board of commissioners provided for, but not the pro-
visions of section 30, requiring candidates to publish
statements of their campaign and election expenses, and
that this did not take effect until the entire charter be-
came effective, one week later. Whether any or all of
the other provisions governing the election officers,
voters, candidates, and for the prevention of fraud are
made effective in that section, is not clearly stated.

I cannot comprehend the process of reasoning by
which this conclusion is reached. I cannot understand

how any one of the provisions authorizing and governing the election can be held to be included and made effective, and not all of them. They are all component parts of one system. What reason is there for holding that part is included and part excluded? What reason is there for excluding this particular provision? What reason is there for not applying these important provisions of section 30, for the prevention and detection of bribery, to the first election under the new charter? The majority have not stated any; I can see none, and do not think any exist.

It is my opinion that, when the legislature provided that the charter should take effect upon a particular day for the election of the first board of commissioners of the city, it contemplated, meant, and intended that all the provisions of this remedial statute authorizing the election, providing when it should be held, who should be its officers, the electors therein, the eligibility of candidates therein, how they should qualify in order to be voted for and enable them to accept and hold the offices, prohibiting bribery and the prevention and detection of it, and, in express terms, the penalties of various kinds, among others, disqualification to hold the office to be filled, for any violation or failure to comply with the provisions made to secure purity in election should apply, be effective, and enforced.

These provisions are all to be found in the same statute, relate to the same subject, are of equal dignity and importance, and all prescribed to accomplish the same end. The most of them are absolutely necessary to the

holding of an election, and the majority must have held that these were made effective.  They all contribute to one of the chief objects to be obtained by the new charter—honest and fair elections, and the prevention of bribery and other corrupt practices in elections.

Can it be said, and does the majority hold, that none of the sections of the statute providing for holding municipal elections, who shall be the officers thereof, who shall be the voters therein, who shall be candidates therein, and their qualifications, the punishment prescribed for all who violate the laws controlling the same, and the disqualification of candidates guilty of the corrupt practice of influencing voters, were not in force when this election was held?  These matters are no more mentioned in section 44 than are the provisions of section 30, which they hold were not in force.

Can it be said that the other sections, prescribing the duties and prohibiting the unlawful acts of candidates, found in the charter, to te effect that they shall have been citizens of Tennessee and residents of the city for at least one year before the election, and that the mayor should be thirty years of age, and the commissioners twenty-five years of age, and that candidates who pay, give, or offer to pay or give, or promise directly or indirectly, office or other thing of value, or knowingly suffer any person to do so, for the purpose of obtaining the vote or influence of an elector, shall suffer the general penalties prescribed by law for such offenses, and be disqualified from holding the offices of mayor and commissioner, were not intended by the legislature to be

effective in the first election held under the charter, and does the majority so hold? I think such holding necessarily follows, that section 30, requiring itemized statements of campaign and election expenses to be published before and after the election, was not in force.

As stated, all these provisions are found in the same statute, were enacted for the same purpose, and what applies to, includes, or excludes one applies to, includes, or excludes all. Those I have referred to are not specially mentioned in section 44, and are not more excluded by the words of that section than is section 30, invoked in this case.

What is the distinction between these several provisions in regard to the qualification and disqualification of candidates, and the others made for the purpose of securing purity in elections? Why should one be in force and not the other? If those first mentioned are not in force, it seems to me there was no valid election. I do not believe that it can be held that the general assembly intended to make such discrimination without cause, and be guilty of the stultification that follows it.

I do not believe that it was the intention of the legislature that one of the most important provisions intended to accomplish this purpose should not be effective in perhaps the most important election under the new form of government. Were they not all needed in the first election as much as any subsequent elec-

tion? As stated by this court in one of the cases referred to:

"Statutes must be construed, if possible, so as to make them sensible, and to effect and carry out the purposes for which they were enacted. It is not to be presumed that the lawmakers will pass a defective or insensible act." *Maxey* v. *Powers,* supra.

In another case (*Wise* v. *Morgan,* 101 Tenn., 273, 48 S. W., 971, 44 L. R. A., 548), this court said:

"The legislature cannot be supposed to intend its own stultification, and therefore the courts will restrain the language of the statute, so as to avoid a construction that would lead to absurd consequences. The presumption against absurdity is probably a more powerful guide in the construction of statutes than the presumption against inconvenience or injustice."

To hold that the legislature did not intend this important provision regulating these elections, prescribed by section 30, that candidates should make publication one day before the election of itemized, sworn statements of their campaign and election expenses, should not take effect until after the first election, while all other provisions for safeguarding and protecting the election should take effect previously, it seems to me convicts that body of the most consummate folly and absurdity, and makes them stultify themselves in enacting the law, yet providing that it shall not be enforced when most needed.

Section 30, providing for the publication of these itemized statements, is, as stated, one of the essential

and integral regulations of the election. It is supplementary to section 6, which prohibits candidates from using money to influence and corrupt voters, and disqualifies them, when guilty, from holding the office sought, for the purpose of exposing and preventing bribery, and aid in the enforcement of that section. It relates to the qualification of candidates in the election. It prescribes a prerequisite to the election. It is necessarily and unavoidably included in the clause providing when the charter takes effect for the purpose of holding an election, just as much so as those providing for the day of the election, the form of it, the officers of it, the voters in it, and the disqualification for bribery of electors. No words need be added to include this provision. If it is not included, then all the other provisions authorizing the elections and to secure the purity of the same are not, and there was no authority for holding the election at all, and it was void, and does not entitle the defendant to the office of mayor. To my mind the legislative intent here is clear and explicit, and the court has no discretion but to enforce it.

The case of *Maxey* v. *Powers*, supra, involved the construction of a statute enacted for the purpose of redistricting Knox county. It contained a section providing that it should not go into effect until September 1, 1906, the day when the terms of the then justices of the peace of Knox county expired. It contained no provision in regard to holding elections to elect justices of the peace for the new districts created, which were radically different from the old ones. The election

126 Tenn. 33

commissioners of Knox county recognized the exist-
ence of this statute, and held elections for justices of
the peace according to the manner in which the county
was redistricted, and justices of the peace were
elected and qualified upon September 1 next thereafter.
This court held that this action of the election com-
missioners was authorized, because it must have been
the intent of the legislature that justices of the peace
for the county should be elected in the new districts
at the general election for that purpose, that to hold
otherwise would have the legislature making no pro-
vision for the justices of the county, and it could not be
presumed that such an absurdity was intended to take
place.    There was no provision there for an election,
as in this case; but the evident intention of the legis-
lature was given effect.

It is said in that case in regard to the election held by
the election commissioners:

"This they could do by reference to the redistricting
act, although it was not in effect at the time the election
was to be held.   It [the redistricting act] had been duly
enacted and placed upon the statute books of the State
by the proper authority.   While no rights can vest under
a statute until it becomes effective, yet it is notice to
every one of what will be the law upon the date it takes
effect, and all must so conduct themselves as to conform
to its provisions when effective.   This is especially true
in regard to public officers whose duties are affected by
the law."

So the statute under consideration had been enacted six months before the election, all candidates were charged with knowledge of its provisions and requirements, and they were charged with the duty of anticipating them and of so conducting themselves as to make them eligible to the offices they sought, when the election was held.

It is further held by the majority that section 30, when properly construed, only requires a candidate to file and publish one statement of his election and campaign expenses. This seems to me in the face of the plain terms of the statute. The language is:

"That every candidate for an elective office and every elective officer of the city of Knoxville shall, the day before the election, and within three days after the election, file with the' recorder and publish at least once in a daily newspaper of daily circulation, his sworn statement. of all his campaign and election expenses itemized, and by whom such funds were contributed."

Here is an express requirement that the statement shall be filed and published the day before the election and within three days after the election. This necessarily requires the filing and publishing of two statements, if all the words of the statute are given effect, as must be done. A statement filed and published one day before the election cannot comply with the requirement that one be published within three days after the election, and the requirement that one be published within three days after the election is no compliance with the provision requiring one to be published the day before

the election. Without absolutely disregarding the phrases "one day before the election," and "three days after the election," it is impossible for my mind to conceive how only one statement would fulfill the mandate of the statute.

The object of the law is contrary to the construction of the majority. The purpose of the publication of a statement of campaign expenses before the election was that other candidates and the public might be apprised of any corrupt use of money made or intended to be made in the election, and the source from which the money came, and might take steps to thwart it. The publication required after the election was to furnish information of corrupt use that had been made of money since the previous statement and on the day of the election, in order that the qualification of the candidate obtaining his election by bribery might be prevented, and his election contested, under the provisions of the charter contained in section 6, disqualifying any candidate who used money, or knowingly suffered it to be used, for the purpose of influencing the vote or votes of electors.

Clearly, two statement, one before the election and one after, are required to be filed and published. The defendant himself so construed the statute, and filed and published two statements; but the first was not published the day before the election, but on the day of the election, a day too late. Defendant's counsel also construed the statute the same way, and did not controvert the necessity of two statements and two publications.

Heiskell v. Lowe.

I am of the opinion that section 30 of the charter, along with all other provisions of the statute relating to holding elections, the electors therein, the eligibility, qualification, disqualification, and duties of candidates, were in force the necessary period before and upon the day of the election, and that the failure of the defendant Heiskell to file and publish the day before the election a sworn and itemized statement of his campaign expenses (for his election expenses had not then been incurred, and would not be until the succeeding day, and were to be published in his second statement), disqualified himself as a candidate for the office of mayor for the term for which he sought to be elected. Such is the plain mandate of the lawmaking power, and the court has no power to disregard it.

I am also of the opinion that the two sworn statements which Mr. Heiskell did file in an attempted compliance with section 30 of the charter are wholly insufficient. They are not the itemized statement of expenses and contributions contemplated by the statute. I do not think the statement that he contributed $500 to the Democratic campaign committee, to be used by it in bearing the legitimate expenses of the campaign, such as office rent, clerk hire, printers' bills, postage, brass bands, etc., is an itemized statement of his expenses. It is a mere statement that he gave a lump sum to the campaign committee for certain purposes, but does not pretend to be a statement of how the money was used. I think this statute contemplated that the candidate should use reasonable diligence to know what funds

were contributed toward his expenses, and how they were used. I believe that in contemplation of this statute the campaign committee are the agents of the candidate, and it is his duty to ascertain what disposition they make of campaign funds and to publish them in his statement.

It will entirely destroy the efficiency of this wholesome law to hold that the condidate may hide behind the campaign committee, his own agents. It will not do to hold that he or his friends can place large sums of money in the hands of a committee, or others, to corrupt the voters in an election, and escape all responsibility. It is charged in this bill, and confessed by the demurrer, that $10,000 was used in this election. Suppose this sum had been contributed by the defendant himself, and admitted in his statement; would the court hold that he was not bound to give some account of how this enormous sum of money was used in a municipal election, when it must judicially know that it could only be used for bribery and other corrupt purposes, in direct violation of the laws of the State and the provisions of the city charter? I think not.

The statute requires that the sworn statement be of all the candidate's campaign and election expenses, itemized, and by whom such funds are contributed. The petition charges that there was contributed to the campaign fund, and used in the election of Samuel G. Heiskell, $10,000 or more. Yet the statement of campaign expenses which Mr. Heiskell published on the day of the election fails to make any mention of contribu-

tions by other parties, or that none was made by other parties; and his statement published after the election contains the statement that "there have been no contributions to me in the election," but is silent as to contributions for campaign expenses. Neither of these statements contains any statement or reference to the $10,000 admitted to have been contributed to his campaign committee and used in aid of his election, or who made the contributions.

These omissions, in my opinion, make the statements fatally defective. It is immaterial that there were other candidates in this election, as the funds were used for Mr. Heiskell's benefit along with those other candidates, and such expenses came within the terms of the statute. If candidates can be allowed to contribute money to their campaign committees, and allow these committees to receive contributions from others, and be excused from making statements of how these funds were used, then the statute is a dead letter, a more empty form. The legislature never intended that this should be done. The campaign committee are the agents of the candidate. They represent him, and expend money for him, and he must ascertain from them from what source the money was received, how they expended it, and show it in his statement. The principal cannot escape responsibility for the acts of his agents within the scope of their agency, and especially when he seeks to reap the benefits of their conduct. This is familiar law.

The construction of a similar statute came before the

courts of Pennsylvania, and it was held (as stated in the syllabus) :

"That the account of a candidate for nomination, showing expenditures made in his behalf to secure the nomination, is insufficient under the act of March 5, 1905, if it shows moneys paid by the candidate to individual agents of his own to be used on his behalf, but fails to show for what purposes the moneys thus intrusted to the agents were used."

And further: "The account which merely exhibits the fact that the candidate has deposited money in the hands of an agent to be used for legitimate expense and does not show the persons to whom, and the purposes for which, the agent paid the money, is not such 'a full, true, and detailed account' as said act of March 5, 1905, plainly contemplated."

Further: "To be a true account, within the spirit and intent of the act, it must set forth each and every sum of money disbursed by the candidate, whether personally or by his agent, for election expenses, and the date of each disbursement, the name of the person to whom paid, and the object or purpose for which the same was disbursed; and, moreover, the account must be accompanied by vouchers for all sums expended exceeding $10 in amount. Filing the receipts of his agents for the money spent by him in their hands does not meet the requirements of the act." *In re Umbel,* 231 Pa., 94, 80 Atl., 541. To the same effect is the case of *Healy* v. *State,* 115 Md., 377, 80 Atl., 1074.

In Ohio, a similar statute came under review of the courts, and it was held that it makes no difference whether the candidate expends the money directly and out of his own pocket, or whether it was paid for him and for his benefit by his agents and friends. *State* v. *Good,* 8 Ohio Dec., 401.

Nor can I agree to the view the majority take of the $15 which Mr. Heiskell in his last statement of election expenses says he paid to Mr. Woods, without any explanation for what purpose it was paid or used. The legislature has made no distinction between large and small sums, and the court has no authority to do so. Defendant should have stated for what use or expense this sum was applied. It is a small sum compared with the $10,000 that was used in this election; but who can say that it did not influence wrongfully the fourteen voters which constitutes Mr. Heiskell's majority over his opponent?

The provisions of the charter (section 6) disqualify candidates for holding office when they have been guilty of using money, directly or indirectly, to influence voters in their behalf. One object of requiring a sworn statement of them is to deter them from so using money, as the publication of the fact would disqualify them from holding the offices to which they may be elected.

One of the primary objects of the commission form of government given the city by the new charter was to free its government of graft, corruption, and bribery in elections, and the administration of municipal affairs, which it has been said is the curse of American munici-

pal government.  Section 30, requiring publicity of campaign and election expenses, is one of the means relied upon to effect this purpose.  It is well known that the use of money in elections, national, State, and municipal, is the greatest menace to our republican institutions.  This evil has challenged the attention of the entire nation, and been the subject of much legislation, both State and federal.

It is comparatively of little importance who holds the office of mayor of Knoxville for the present term, but it is unfortunate that the wholesome provision of the charter of the city, intended to secure the purity of elections and prevent and punish bribery and corrupt practices, should be substantially emasculated by what seems to me a too rigid construction of the law.

The provisions in question are remedial in their nature, and should be given a broad and liberal construction to suppress the evil which the Legislature intended to prevent.  It is said in a late work of authority that "laws enacted in the interest of public welfare, . . . for the prevention of fraud, for providing remedies against either public or private wrongs, shall be liberally construed with the view of promoting the object in the mind of the legislature."  Cyc., vol. 36, 1173, 1174.

Mr. Sutherland in his work on Statutory Construction (section 336), says:  "Remedial statutes are such as the name implies, embracing a great variety in detail. Those enacted to afford a remedy, or to improve and facilitate remedies existing, for the enforcement of

Heiskell v. Lowe.

rights and the redress of injuries, and also those intended for the correction of defects, mistakes, and omissions in the civil institutions and administrative policy of the State."

And in section 582: "The law favors a liberal construction of certain statutes, to give them the most beneficial operation. When they are liberally construed, the principles which induce strict construction are not lost sight of nor ignored. Liberal construction is given when these principles do not so antagonize it as to make it unjust. Two classes of statutes are liberally construed—remedial statutes, and statutes which concern the public good or the general welfare."

These rules, in my opinion, should be applied in the construction of this undoubted remedial law, and, when applied, the terms and provisions of it are clearly and unmistakably in favor of the contention of the petitioner.

I am of opinion that Mr. Heiskell failed to comply with the charter, by making publication of his campaign and election expenses, in time and form, as prescribed by its provisions, which are component parts of the constitution of the municipality, the chief executive of which he aspires to be, and that by the express terms of this constitution he is disqualified from holding that office for the term for which he was a candidate, and, therefore, that the petition should be sustained, and he be enjoined from qualifying and assuming the duties, powers, and emoluments of mayor of the city.

Mr. Justice Neil concurs in the views herein expressed and joins in this dissent.